Points decided.

[No. 739.]

# STATE OF NEVADA, EX REL., JOHN PIPER, RELATOR, v. THOMAS GRACEY, ASSESSOR, AND A. J. MC-DONELL, AUDITOR OF STOREY COUNTY.

MANDAMUS—COLLECTION OF TAXES—PROCEEDS OF MINES.—The collection of taxes solely due to a county is a question of public concern as well as of private interest, the collection of such taxes involve public duties and public rights.

IDEM—BENEFICIAL INTEREST OF RELATOR.—When the question is one of public rights, and the object of the writ of mandamus is to procure the enforcement of a public duty, the relator is not required to show that he has any legal or special interest in the result; he is interested, as a citizen, in having the laws executed and the right enforced.

IDEM.—A private citizen and a taxpayer has such a direct and special interest in the collection of county taxes as entitles him to move for and prosecute the writ of mandamus to enforce that duty upon the part of public officers.

MANDAMUS A CIVIL REMEDY.—The proceeding by mandamus is a civil remedy, having all the qualities and attributes of a civil action, and is applied solely for the protection of civil rights.

IDEM—PLEADINGS.—The alternative writ and the return thereto are usually regarded as constituting the pleadings in proceedings by mandamus, the writ standing in the place of the complaint, and the return taking the place of the plea or answer in an ordinary action at law.

IDEM.—The rule as declared in Curtis v. McCullough (3 Nev. 202), that "it is the affidavit and not the writ, which under our practice is answered," referred to in connection with the rule above stated.

IDEM—WHAT FACTS MUST BE SHOWN.—To justify the issuance of the writ of mandamus, to enforce the performance of an act by a public officer, the act must be one, the performance of which the law specially enjoins as a duty resulting from his office, and an actual omission upon the part of the officer to perform.

IDEM.—The relator must show, not only that the officer has failed to perform the required duty, but that the performance thereof is actually due from him at the time of the application.

IDEM.—The court cannot anticipate that a public officer will not perform his duties within the time prescribed by the statute, and an actual default or omission of duty is just as essential a prerequisite to the issuance of the writ as is the want of an adequate remedy in the ordinary course of law.

COUNTY COMMISSIONERS HAVE NO POWER TO RELEASE PROPERTY FROM TAXATION.—County Commissioners have no power to discriminate as to the character of the property which should be subject to taxation. That is a question for the legislature, subject to the provisions of the constitution.

THIS was an original application to the supreme court for a writ of mandamus to compel the auditor of Storey county to correct the assessment-roll of the proceeds of the mines for the quarter ending June 30, A. D. 1875, by adding to the tax collectible upon the proceeds of the mines certain taxes levied for school and railroad bond purposes, and to compel the assessor of Storey county to collect the said taxes as other taxes are collected upon such proceeds of mines. The affidavit shows that on the fifth day of April, A. D. 1875, the board of county commissioners of Storey county made an order levying taxes for the fiscal year A. D. 1875. The order levying the tax for county purposes upon all the taxable property within the county of Storey, included the proceeds of mines and mining claims. The order levying the tax for school purposes and for the payment of certain railroad bonds specially provided that: "The tax levied in this section does not include the proceeds of mines and mining claims."

The mine-owners appeared by counsel, and moved to quash the writ upon the grounds stated in the opinion.

*J. A. Stephens and Mesick & Seeley*, for the motion.

I. Neither the state nor the relator is the "party beneficially interested," or entitled to bring or maintain this proceeding. (Stat. 1869, p. 50, sec. 6; p. 51, sec. 7; Stat. 1873, p. 162, sec. 13; *Morgan* v. *Cree*, 46 Vermont, 773.)

In cases where the state is allowed to be a party plaintiff in the relation of some one, she is considered only a nominal party and not the real party in interest. (*People* v. *Pacheco*, 29 Cal. 213; *Browers* v. *O'Brien*, 2 Cart. Ind. R. 431; *State* v. *Com'rs. Perry Co.*, 5 Ohio, 502–3; High on Ext. Rem., sec. 430; Moses on Mandamus, 194.)

The relator is, in law, considered as the moving party, and the real plaintiff or applicant in the proceeding. The attorney-general is not the relator in any sense in this case. A relator must always appear by the proceedings to be invested with the character of a real party in interest, or no right or title appears in him to commence or maintain the proceeding.

The words of the statute, defining who may institute this proceeding or apply for the writ, imply a limitation and an exclusion of all persons not within the definition. In effect, those words declare that one who is not beneficially interested shall not apply for nor obtain the writ.

The relator must have an interest more specific and tangible than the interest which every taxpayer or citizen has in the enforcement of every statute law. (*People ex rel. County of Contra Costa* v. *Supervisors of Alameda Co.*, 26 Cal. 641; *Linden* v. *Alameda Co.*, 45 Id. 6–7; *Tyler* v. *Houghton*, 25 Id. 29; *Sanger* v. *Com'rs. of Kennebec*, 25 Maine, 296; *State* v. *County Judge of Davis Co.*, 2 Iowa, 285–6; *Wellington* v. *Petitioners, etc.*, 16 Pick. 105; *Heffner* v. *The Commonwealth*, 28 Penn. 112; *People* v. *Inspectors, etc.*, 4 Mich. 187; *State* v. *Haben*, 22 Wis. 667–8; *Rex* v. *Merchant Tailor's Co.*, 22 Eng. Com. Law, p. 40; 2 Barn. & Adolphus, 115; High on Ext. Rem., sec. 436.)

II. All the facts which are necessary to show the derelictions of duty on the part of respondents and to entitle the relator to the relief sought, must be specifically set up in the affidavit or application, if not in the writ. (High on Ext. Rem., secs. 12, 448, 450, 536, 539; Mosés on Mand., 201, 202; *State* v. *McCullough*, 3 Nev. 214; *Evans* v. *Job*, 8 Id. 344; *Chance* v. *Temple*, 1 Iowa, 179; *Himmelman* v. *Danos*, 35 Cal. 447–8; *People* v. *Jackson*, 24 Id. 632–3; 6 Texas, 473; 39 Mo. 388; *Hall* v. *People*, 57 Ill. 316.)

*Lewis & Deal*, for Relator, against the motion.

I. The state may always enforce the performance of their duty by public officers, and, in such case, it is a party beneficially interested; especially so when the object of the writ is to enforce the collection of revenue. It is no answer to say that the state has no interest in the tax to be collected. It may not have, and yet it cannot be said that the state has not a direct interest in the performance of duty by every public officer in the state. However, the state is beneficially interested in the collection of all taxes, state, city and county; for a city, as well as a county, is but an integral

part of the state, and all county taxes are really collected in the name of the state, the same as its own taxes.

If the state have no interest whatever, then we claim that Piper is a proper party as relator, in a case of this kind, which is brought to enforce the performance of a duty by a public officer. (19 Wend. 56; 7 Iowa, 390; *People* v. *Halsey*, 37 N. Y. 344; 36 Cal. 595; High on Ext. Rem., secs. 431–32; Moses on Mandamus, 197.)

II. The proceeding by mandamus is, in all essentials, a civil action. (*State ex rel. Curtis* v. *McCullough*, 3 Nev. 202; *People* v. *Supervisors of San Francisco*, 27 Cal. 670; 2 Carter, Ind. 423.) There is enough in the petition to satisfy the court that the assessor has heretofore refused to collect the taxes mentioned; and when the peculiar facts of this case are considered, it seems to us the court should issue the writ, even if no dereliction of duty, with respect to the the particular quarter in question, be shown. However, if we are wrong in this particular, then we claim that if the writ can issue to the auditor, it should be rendered effectual by also commanding the assessor to complete the act, only the first step of which is taken by the auditor. When we allege that it is the auditor's duty to do a certain act, to wit: extend the tax, and then allege that he has refused and still refuses to perform it, it is sufficient under any rule of pleading; and after having unqualifiedly *refused* to perform it, he cannot be allowed to come into court and shield himself under the claim that he had still further time to do it. If he refused, for the reason that he had still further time, and intended to perform his duty, he should have so stated. The law presumes, if he absolutely refuses to do an act, and gives no excuse therefor, that he does not intend to do it; that he, in fact, will not even in the future do so.

III. No demand is even necessary when the writ is sought to compel the performance of an official duty. (Moses on Mand., 125, citing 37 Penn. 237, 277; High on Ext. Rem., secs. 13 and 41.)

IV. The law presumes that a public officer has performed his duty until the contrary plainly appears. (4 Keyes, N. Y. 162; 1 Tiffany, 304; Broome's Maxims, 943–4; 12 Wheaton,

69–70; 1 Phil. on Ev., secs. 642, 598–note, 500–note; 23 Cal. 114; 24 N. Y. 86; 7 N. Y. 466; 19 Johns. 345.) And when the law presumes the existence of a fact, or that an act has been done, it need not be pleaded. (1 Chitty, secs. 220–21; Stephen on Pleading, 1st Ed., 358.) Hence, if the law presumed that the assessor did his duty, it presumed that he delivered the roll to the auditor on the day he was required to do so; and therefore, under the authorities, no allegation that it was done was necessary.

By the Court, EARLL, J.:

The first question presented by the motion of respondents to quash the alternative writ of mandamus, issued in this case, is whether either the state of Nevada or the relator is shown, by the affidavit upon which the writ issued, to be the party beneficially interested; and especially whether either is so interested in the collection of the railroad bond tax, mentioned in the affidavit and writ, as to be entitled to institute this proceeding for the collection thereof.

By section 448 of the civil practice, it is provided: "This writ shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It shall be issued upon affidavit on the application of the party beneficially interested." It is contended on behalf of respondents, that, inasmuch as the funds to be raised by the taxes in question are to go into the county treasury and to be disbursed by the county officers, instead of going into the state treasury to be disbursed by state officers, that the state has no beneficial interest in the subject matter of the application; or, at least, "has no other interest than she has in the enforcement of any law admittedly passed for the exclusive benefit of some private citizen, or some private or municipal corporation."

It is a settled rule that where private interests only, or chiefly, are concerned, and the state is only the nominal party, the relator, who is the real party in interest, must show that he, as an individual, is entitled to the relief sought. But we are of opinion this is a question of public concern as well as of private interest. It relates to the

collection of taxes imposed by the authority of public stat-
utes enacted by the sovereign power of the state, and the
money, when collected, is received by the county in its pub-
lic political capacity, to be applied by the officers of the
county to the specific public purposes designated in the re-
spective statutes which provide for its levy and collection.
In fact, all taxes imposed for county purposes emanate from ·
state authority, and the collection thereof can only be en-
forced in the name of the state. Both the levy and collec-
tion is the action of the state, operating through the
instrumentality of its county organizations. Counties are
but integral parts or local sub-divisions of the state, insti-
tuted merely as means of government, and they, and the
officers thereof, are but parts of the machinery that consti-
tute the public system, and designed to assist in the admin-
istration of the civil government. (2 Kent's Com. 275.
*Mayor & C. C. of Balto., Garn. of Brashears,* v. *Root,* 8 Md.
95; *State to the use of Washington County* v. *B. & O. R. R.
Co.,* 12 Md. 436; *Mayor of Balto.* v. *State,* 15 Md. 376; *Ham-
ilton County* v. *Mighels,* 7 Ohio Stat. 109.) In the last case
cited, Brinkerhoff, J., delivering the judgment of the court,
states the distinction between municipal corporations prop-
er and county organizations, thus: "As before remarked,
municipal corporations proper are called into existence
either at the direct solicitation or by the free consent of the
people who compose them.

"Counties are local subdivisions of a state, created by the
sovereign power of the state, of its own sovereign will, with-
out the particular solicitation, consent or concurrent action
of the people who inhabit them. The former organization
is asked for, or at least assented to, by the people it em-
braces; the latter is superimposed by a sovereign and para-
mount authority.

"A municipal corporation proper is created mainly for the
interest, advantage, and convenience of the locality and its
people; a county organization is created almost exclusively
with a view to the policy of the state at large, for purposes
of political organization and civil administration, in matters
of finance, of education, of provision for the poor, of mili-

tary organization, of means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy."

It therefore follows that the levy and collection of the taxes in question involve public duties and public rights, and in all such cases, though the state is regarded as the real party in interest, it must necessarily act through individual information, by some public officer or upon the relation of some private individual. (*People* v. *Collins,* 19 Wend. 56.)

In this case the application is by a private citizen and taxpayer of Storey county, and it is contended, by the counsel for respondents, that a private citizen has no right to apply for the writ of mandamus to compel a public officer to perform an omitted duty unless he shows a special interest in the subject-matter distinct from that of other citizens, and that the relator fails to show that he has any other interest in the levy or collection of the taxes in question than that which every other resident or corporation may have, and therefore is not entitled to apply for or prosecute the writ. Upon this proposition there is an irreconcilable conflict in the decisions of the courts of the different states. In Maine, Massachusetts, Pennsylvania, Michigan, and California, they fully support the position of respondents, and hold that to entitle a private citizen to move for and prosecute the writ, he must show that he has some private or special interest to be subserved, or some particular right to be pursued or protected, independent of that which he holds in common with the public at large, and that "it is for the public officers to apply when public rights alone are to be subserved." (*Sanger* v. *County Commissioners of Kennebeck,* 25 Me. 291; *Heffner.* v. *Commonwealth,* 28 Pa. 108; *Wellington's Petitioners,* 16 Pick. 87; *People* v. *Regents of University,* 4 Mich. 98; 45 Cal. 607.)

But we think the better and more reasonable rule is established by the decisions of the courts of New York,

Ohio, Indiana, Illinois, and Iowa, which hold the opposite doctrine, and maintain that when the question is one of public right, and the object of the mandamus is to procure the enforcement of a public duty, the relator is not required to show that he has any legal or special interest in the result, it being sufficient if he shows that he is interested, as a citizen, in having the laws executed and the right enforced. (*People* v. *Collins*, 19 Wend. 56; *People* v. *Halsey*, 37 N. Y. 344; *State ex rel. Huston et al.*, v. *Commissioners of Perry County*, 5 Ohio, 497; *The County of Pike* v. *The State*, 11 Ill. 202; *City of Ottawa* v. *The People*, 48 Id. 233; *Hull ex rel.* v. *People*, 52 Id. 307; *Hamilton* v. *The State*, 3 Ind. 452; *State* v. *County Judge of Marshall County*, 7 Iowa, 186.)

We are, however, of opinion that the relator has a direct and special interest in requiring the taxes in question to be collected, and even upon the authority of the first of the above cited cases, assuming it to be the duty of respondents to disregard the order of the board of county commissioners excepting the proceeds of mines from the payment of the taxes levied for school and railroad bond purposes, to extend the amount levied for said purposes upon the assessment-roll of the proceeds of mines, that he is a proper party to move for and prosecute the writ. The constitution provides that: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation of all property, real, personal and possessory, excepting mines and mining claims, the proceeds of which alone shall be taxed." It would seem to require no argument to prove that if the proceeds of mines and mining claims are exempt from the payment of their relative portion of the taxes levied for school and railroad bond purposes, that the ratio of taxation must necessarily be increased upon other kinds of taxable property, and the owners thereof would be compelled to contribute more than their due share toward the public burdens, hence the relator, being a citizen and taxpayer of Storey county, is manifestly interested in requiring that the

proceeds of mines and mining claims within the county bear their equal and just proportion of the taxes imposed.

The remaining question to be considered relates to the sufficiency of the affidavit upon which the application for the mandamus was founded. It is contended on behalf of respondents that the affidavit does not state facts sufficient to authorize the issuance of the alternative writ, or to make it peremptory.

It is claimed on the part of respondents that to authorize the issuance of the alternative mandamus, or to make it peremptory, it was incumbent upon the relator to set forth specifically, in his affidavit or application, all the facts which are necessary to show the dereliction or omission of duty on the part of respondents, and to entitle the relator to the relief which he seeks.

We do not understand the counsel for the relator as controverting this well settled legal proposition, but they insist that, notwithstanding the facts are to be specifically set forth as claimed by respondents, yet the proceeding by mandamus is, nevertheless, "in all essentials, a civil action," and that the sufficiency of the affidavit is to be determined by the rule prescribed by the civil practice act of this state governing pleadings in ordinary civil actions, and, therefore, the facts stated are to be liberally construed.

Although the remedy by mandamus is prosecuted in the name of the state upon individual relation or information, and instituted for the purpose of enforcing the due performance of official duty, and is said, "to partake somewhat of a criminal nature," yet the proceeding is uniformly declared by the courts to be "a civil remedy having all the qualities and attributes of a civil action," and is applied solely for the protection of civil rights. (High's Ex. Rem., secs. 8, 430; Moses on Mandamus, 14, 194; *Brower* v. *O'Brien*, 2 Carter, 423; *McBane et al.* v. *The People*, 50 Ill. 503; *The State ex rel. Byers* v. *Bailey, County Judge*, 7 Iowa, 391; *Judd* v. *Driver*, 1 Kan. 455.) Besides, in this state, the proceeding by mandamus is provided for by, and constitutes a part of, the provisions of the civil practice act, and section 37, which declares that: "All the forms of pleadings

in civil actions, and the rules by which the sufficiency of the pleadings shall be determined, shall be those prescribed by this act," manifestly refers to the pleadings in cases of mandamus as well as to the pleadings in other actions or proceedings provided for by the act.

The alternative writ and the return thereto are usually regarded as constituting the pleadings in proceedings by mandamus—the writ standing in the place of the declaration or complaint, and the return taking the place of the plea or answer in an ordinary action at law. This court, however, in the case of *Curtis* v. *McCullough* (3 Nev. 202), declared that "it is the affidavit, and not the writ, which under our practice is answered." If this is a correct view of the practice under the statute of this state, it follows that the affidavit upon the writ issues, and the allegations of which are to be answered, is to be regarded in the nature of the complaint in an ordinary civil action. But whether it is the affidavit or the writ which the statute requires to be answered, there can be no doubt that, for the purposes of this motion, the affidavit performs the office of a complaint, and the sufficiency thereof is alone to be considered. (Civil Pr. Act, sec. 456.)

The question, therefore, recurs whether the affidavit, considered in the nature of a complaint in an ordinary civil action, and tested by the rule prescribed by the practice act, states facts sufficient to entitle the relator to the relief which he seeks.

Section 39 of the act declares that the complaint shall contain "a statement of the facts constituting the cause of action, in ordinary and concise language." This provision of the act is uniformly construed by the courts to mean that the plaintiff must set forth in his complaint, specifically, every fact in an issuable form, which is necessary to establish his right of action, or which, if admitted to be true, or not denied by the defendant, will enable the court to grant the relief sought. (1 Van Santvoord's Pl. 215–16, and authorities cited.) It is true, section 70 of the act requires that, for the purpose of determining the effect of a pleading, "its allegations shall be liberally construed, with a view to sub-

stantial justice between the parties." The effect of this section, in our opinion, is correctly stated in 1 Van Santvoord's Pleadings, 774, where it is said: "Although the section in question may be in some sense a rule to determine the sufficiency of the pleadings, yet it applies merely to the construction of the language and the terms used, and has no reference to the question of the sufficiency of the facts or matters of substance. It is to be applied, as was the rule under the old system, mainly where words are equivocal and terms and expressions are capable of different meanings."

Applying these principles and rules of construction to the affidavit under consideration, it seems quite clear to us that the facts therein presented are insufficient to justify the court in awarding the peremptory mandate against either of the respondents.

Section 447 of the civil practice act provides that the the writ may be issued "to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

The principle on which the writ of mandamus is issued at common law is well settled by the authorities, and this provision of the statute seems to be but a legislative recognition of the common law rule. To justify the issuance of the writ to enforce the performance of an act by a public officer, two things must concur: the act must be one the performance of "which the law specially enjoins as a duty resulting from an office," and an actual omission on the part of the respondent to perform it. It is incumbent on the relator to show, not only that the respondent has failed to perform the required duty, but that the performance thereof is actually due from him at the time of the application. (Tap. on Mand., 10; *Comm'rs of Public Schools* v. *County Comm'rs of A. Co.,* 20 Md., 449; *State* v. *Carney,* 3 Kan. 88; *State* v. *Burbank,* 22 La. An. 298; *State* v. *Dubuclet,* 24. La. An. 16.)

The rule which is to govern the issuance of the writ is clearly indicated in High's Ext. Leg. Rem., sec. 12, where it is said: "Mandamus is never granted in anticipation of

a supposed omission of duty, however strong the presumption may be that the persons, whom it is sought to coerce by the writ, will refuse to perform their duty when the proper time arrives. It is, therefore, incumbent upon the relator to show an actual omission on the part of the respondent to perform the required act, and since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time. In other words, the relator must show that the respondent is actually in default in the performance of a legal duty then due at his hands, and no threats or ‘predetermination can take the place of such default before the time arrives when the duty should be performed, nor does the law contemplate such a degree of diligence as the performance of a duty not yet due."

This proceeding relates to the duties of the respondents in respect to the assessment and collection of the tax on mines for the quarter ending June 30, 1875. By section 2 of the act entitled "An act providing for the taxation of mines" (Stat. 1871, 87), it was the duty of respondent Gracey, as assessor of Storey county, to prepare and complete his assessment-roll for said quarter, on or before the second Monday of August following. And by the provisions of section 107 of the general revenue act (Comp. L., 3219), he was required to attach his certificate thereto, and deliver the same, together with the sworn or affirmed statements provided for by the first of the above-mentioned acts, to the county auditor, "who shall examine said assessment-roll, and ascertain that the assessments therein entered comply with the sworn or affirmed statements relating thereto." This section further provides: "And in case of the neglect or refusal of any person, firm, corporation, association, or company, to give the statement, as herein provided, that that fact is noted as heretofore provided, he shall then proceed to extend on such quarterly assessment-roll, the taxes, as provided in this act, on the proceeds of mines. He shall add up the columns of valuation, as set down in the assessment-roll, and shall prepare a statement (which shall be under oath) of the total number of tons of ore,

quartz or mineral, bearing gold and silver, listed upon said assessment-roll, the total value thereof, the total amount on which the taxes were levied, and the total amount of taxes on the same, which statement he shall immediately forward to the controller of the state." Section 108 provides: "After adding the columns of valuation and extending the taxes, as provided in the preceding section, the county auditor shall attach his certificate thereto, and shall, on or before the fourth Mondays in February, May, August and November in each year, deliver the assessment-roll for the preceding quarter respectively, to the county assessor for collection, and shall charge the assessor with the full amount of taxes levied."

It will thus be seen that extending or entering the amount of the tax levied for any purpose on the assessment-roll of the proceeds of mines, is no part of the duties enjoined upon the assessor, and as the only omission of duty alleged against the respondent Gracey is that "he did not and will not correctly assess or return the total amount of tax due from the mines in his district, the county of Storey," it is evident that neither the state nor the relator has any legal cause of complaint against him. It is true, the form of the assessment-roll prescribed in section 2 of the act of 1871, contains the heading of a column for extending the total amount of the taxes levied; but when the section is read in connection with sections 107 and 108, and section 16 of the general revenue act, it is apparent that that column is designed for the auditor, and not for the assessor.

It is, however, very clear that the board of county commissioners of Storey county possessed no power to discriminate as to the character of the property which should or should not be subject to taxation. That is a question for the legislature, subject to the provisions of the constitution. It is therefore apparent that the order of the board excepting the proceeds of mines from the operation of the levy of the taxes in question, was a mere nullity; and although it was the plain duty of the respondent McDonell, as auditor, to disregard said order and to enter or extend the taxes thus levied upon said assessment-roll, yet he was not in default,

or guilty of any omission of official duty at the time of the institution of this proceeding, the statute expressly giving him until the fourth Monday (23d), of the month in which to perform his duty in that regard.

It is insisted, however, on the part of the relator, that the alternative writ was properly granted against the auditor and should be made peremptory, notwithstanding the time allowed by the statute for extending the taxes in question had not expired when this proceeding was instituted. The argument, in substance, is that unless the writ issues before the expiration of the designated time, the remedy by mandamus is lost to the people; that it would then be too late, because the assessment-roll would be in the hands of the assessor, and the auditor not having authority to require a re-delivery thereof, would be unable to perform the required act; and inasmuch as the writ will not lie to compel the performance of an act which the respondent is powerless to perform, there would be no adequate remedy against him.

It is true, the statute authorizes the issuance of the writ "in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law;" and it may be, as the counsel for the relator suggest, that if the assessment-roll is delivered to the assessor before the tax is extended thereon, that the auditor would not have the power afterwards to recall it for the purpose of making the required extension. The court, however, cannot anticipate that the auditor will not perform his duty within the time prescribed by the statute, and an actual default or omission of duty is just as essential a prerequisite to the issuance of the writ as is the want of an adequate remedy in the ordinary course of law. The principle which has for many years governed the administration of the law of mandamus in England, has been uniformly adopted by the courts in the United States, both federal and state, and we are satisfied that the statute of this state is but a legislative recognition of the law as thus administered; and in the language of Crozier, C. J., in the case of *The State ex rel. Price* v. *Carney et al., supra:* "The court has taken some pains to find a case in which the writ was allowed before the time at which the law required the

act to be performed had elapsed; and although the examination has extended to all the books likely to throw light upon the subject within our reach, no such case has been found, nor has one such been cited by counsel. On the contrary, we have found an unbroken current the other way."

We are, therefore, of opinion that the application for the mandamus in this case was premature, and for that reason must be dismissed as against both of the respondents. This conclusion renders it unnecessary to consider, or at least to express any opinion in respect to the other questions presented or discussed in the briefs of counsel, and wo do not desire to be understood as expressing any opinion whatever upon them. It is therefore ordered that the alternative writ and proceeding be dismissed.