## Moses et al. vs. Kearney, Clerk, etc.

1. MANDAMUS: *Practice in.*
   Under the provisions of the Code of Practice all questions of law and fact arising upon an application for mandamus should be submitted together, and disposed of at the same time.

2. ————: *Parties.*
   Where the writ of mandamus is sought for the enforcement of a public right, common to the whole community, it is not necessary that the relator should have a special interest in the matter, or be a public officer; the statute, however, requires that the proceeding shall be in the name of the State.

3. MUNICIPAL REGULATION: *Contract, etc.*
   Section 20, of chapter 44, Gould's Digest, which provided that when a county seat had been established for four years it should not be removed without the assessment by the County Court of a sufficient tax to pay the lot owners for their lots and improvements, was a mere municipal regulation, subject to repeal by the Legislature, and not a contract within the meaning of section 10, article 1, of the Constitution of the United States.

APPEAL from *Conway* Circuit Court.

Hon. W. N. MAY, Circuit Judge.

*Clark & Williams,* for appellants.

*Benjamin & Barnes, contra.*

HARRISON, J. :

This was an application by Joshua Moses, and nineteen other residents and owners of lots, in the town of Springfield, in Conway County, for a mandamus to William Kearney, the Clerk of

said county, to remove his office from Lewisburg back to Spring-field, from whence he had moved it, and to keep it at the latter place.

Springfield had been the established seat of justice since 1852. It was located there in pursuance of the general law relating to county seats (Ch., 44, Gould's Digest), then in force, which contained the following provision:

"Section 20. When the seat of justice of any county shall have been established for the term of four years, the same shall not thereafter be removed unless the County Court shall cause a sufficient tax to be assessed on all the taxable property within the county, to pay the owners of lots, at such seat of justice, for their lots and improvements."

The General Assembly, on the 16th of April, 1873, passed an act to remove it to Lewisburg.

The preamble of the act recites that, "the creation of the county of Faulkner from the counties of Pulaski and Conway has left Springfield, the County seat of Conway County, on the extreme eastern border of said county, and the addition of territory from Perry and Pope Counties places Lewisburg centrally in the county, taking into consideration population, railroad and river facilities, and commercial importance;" and the first section is as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Arkansas,* That Alexander Davis, W. G. Gray and William Moore be, and they are hereby appointed commissioners, who, upon receiving a bond from the incorporation of Lewisburg, conditioned that said incorporation shall, by the first day of January, 1874, donate to the county of Conway, subject to the control of the County Board of Supervisors, a sufficient sum of money and material to erect a court house equal in value to the present one at Springfield, in said county, and furnish a suitable building or

buildings for county officers, and court room, free of expense to Conway County till January 1st, 1874; shall, in pursuance of this act, order the several county officers to move their offices, records and office fixtures to the building or buildings in Lewisburg designated for the use of the county. Thereafter Springfield shall cease to be the County seat of Conway County, and Lewisburg shall be the County seat of said county."

Their petition alleges that no tax had been assessed to pay them for their lots and improvements; and that although the corporation of Lewisburg had not executed the bond required by the act, and the Commissioners had made no order directing the county officers to move their offices to Lewisburg, the said County Clerk had moved his office, and was keeping it there.

The defendant filed a demurrer to the petition upon the ground that the petitioners had no specific right in the subject matter, to be affected or impaired by the removal of the County seat from Springfield.

The court sustained the objection, and refused the mandamus.

The case was decided at the July term, 1873, of the Circuit Court, but the appeal was not taken until the 15th day of May, 1875, and it was not submitted in this court until a day of the present term.

The demurrer admitting, as a matter of course, the truth of the allegations of the petition, the removal of his office by the County Clerk seems to have been without either color or pretext of authority. Probably his counsel intended, if the demurrer was overruled, to make other answer, and put in issue the allegations of the petition or some of them. We think, however, that the practice contemplated by the Civil Code, and the better one in applications for mandamus, is, that all questions, both of law and fact, shall be submitted together, and disposed of at the same time. Section 4153, Gantt's Digest, says: "The party

against whom the mandamus (* *) is sought, shall file an answer wherein he shall state the reason why the writ should not be granted, which answer shall be filed at or before the time fixed for making the motion," and by section 4154, the court is required "to hear and decide all questions of law or fact arising in the motion, and the granting or refusing of the writ shall be the final order in the motion."

In a proceeding of this character delay would often defeat the object sought, and a seeming necessity exists for its speedy determination, not admitting of the delay which might be occasioned by several appeals to this court.

The rule is well settled that when, in the absence of statutory regulation, the proceedings are for the enforcement of a duty, affecting not a private, but a public right, common to the whole community, it is not necessary that the relator should have a special interest in the matter, or that he should be a public officer. Moses on Mandamus, 137; *Hamilton* v. *The State*, 3 Ind., 458; *The People* v. *Collins*, 19 Wend., 56; *County of Pike* v. *The State*, 11 Ill., 202; *State* v. *County Judge*, 7 Clarke (Iowa), 186; *People* v. *Tracy*, 1 How. Pr., 186; *People* v. *Supervisors*, 18 ib., 461.

Our statute, sec. 4151, Gantt's Digest, however, requires the proceedings, when the public interest is affected or concerned, to be in the name of the State. Then the proceedings in this case, if the petitioners' have no interest except such as is common to the rest of the community, cannot be sustained, and the court below correctly refused them the writ, though if applied for by the State it should have been granted.

But the appellants claim a special interest. They say they have, by sec. 20, Ch. 44, of Gould's Digest, under the provisions of which statute the seat of justice was established at Springfield, the right to be paid for their lots and improvements there,

and to have the tax to pay them, provided for in said section, assessed before it is removed.

We think there is no doubt, though that question is not before us, that in a proceeding under the provisions of that statute, when it was in force, for the removal of a county seat, provisions should have been made for payment to the lot-owners by the assessment of the tax directed by said section; but that statute was repealed by the act of March 16th, 1869, Ch. 34 Gantt's Digest, revising the law concerning the removal of county seats, and it makes no provisions for the payment of the lot-owners; and the act of April 16th, 1873, makes none.

It is, however, contended that the repeal of the law could not deprive and divest them of a right acquired under its provisions, and, as they claim, by contract with the State.

It is well established doctrine that the contracts of the State are equally as inviolable by it as those between private individuals; but a distinction must be drawn between contracts and measures and regulations which concern the system of administration or government of the State.

The distinction was very clearly stated by the Supreme Court of the United States in the case of *Butler et al.* v. *Pennsylvania*, 10 How., 416. The court in that case say: "The contracts designed to be protected by the tenth section of the first article of that instrument (the Constitution of the United States) are contracts by which perfect rights, certain, definite, fixed private rights of property, are vested. These are clearly distinguishable from measures or engagements adopted, or undertaken, by the body politic or State Government for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied or discontinued, as the public good shall require." Sedg. on Stat. and Const. Law, 581; Cooley on Const. Lim., 275–574; *Thorpe* v. *R. & B. R. Company*, 27 Vt., 140.

Chief Justice Marshall, in delivering the opinion of the court in *Dartmouth College* v. *Woodward*, said: "That the framers of the constitution did not intend to restrain the States in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given us is not to be so construed, may be admitted." *Dartmouth College* v. *Woodward*, 4 Wheat., 629.

It is plain that the Ch. 44 of Gould's Digest was a municipal regulation only, and that whatever interest or right the appellants had under its provisions, not common to all the people of the county of Conway, which, at best, was only contingent, was swept away and abrogated by its repeal.

The judgment of the court below is affirmed.