[No. 6249.    Decided January 4, 1907.]

THE STATE OF WASHINGTON, on the Relation of E. G. Harvey, Respondent, v. L. H. MASON et al., as Mayor etc. of Republic, Appellants.[1]

ELECTIONS—CANVASS OF RETURNS—MANDAMUS TO COMPEL—PARTIES PLAINTIFF. A citizen and voter has sufficient interest to be entitled to institute mandamus proceedings to compel a city council to canvass the returns of a city election.

SAME—DUTY OF CANVASSING BOARD—VALIDITY OF ELECTION. The city council cannot refuse to canvass the returns of a city election on the ground that the election was illegally held, their duties being purely ministerial.

[1]Reported in 88 Pac. 126.

Appeal from a judgment of the superior court for Ferry county, Steiner, J., entered January 17, 1906, after a hearing on the merits, granting a writ of mandate to compel the mayor and council of a city to canvass election returns. Affirmed.

*G. V. Alexander*, for appellants.

*W. T. Beck* and *Alfred M. Craven*, for respondent.

Hadley, J.—This is a proceeding in mandamus to compel the mayor and city council of the city of Republic to canvass the election returns of an election held in said city on the 5th day of December, 1905. The election was for the selection of municipal officers, and was held on the day provided by law for the election of officers in cities of the third class, to which class the city of Republic belongs. The city council neglected to cause notice of the election to be given, and no one of the steps required of the mayor and council by law as a preliminary to the election was taken. On the 2d day of December a mass convention of citizens of the city was held, for the purpose of making nominations for the various city-offices to be filled at said election. A chairman and secretary were duly appointed, nominations were made, and a certificate thereof was filed with the city clerk the same day, no other certificate of nominations being filed. The city clerk refused to cause ballots to be printed; whereupon the chairman and secretary of said mass convention, in conjunction with a number of other citizens, demanded of the clerk a certified list of the nominations filed with him, and the same was thereupon furnished by the clerk. The said chairman and secretary, in conjunction with other citizens, then caused ballots to be printed from said certificate for each of the wards of the city in the form provided by law. The ballots so printed were delivered to the city clerk, who on the day of the election, previous to the hour of nine

o'clock, a. m., took said ballots for each of the three wards and placed them in each of the three ballot boxes of the city respectively, but he did not count the number of tickets. The clerk then locked the boxes, retained one of them, and delivered two of them to other individuals, and these and the clerk carried them to places in the respective wards which were afterwards used for polling places at said election. Before delivering the boxes to the two other persons, the clerk administered an oath to each of the other two persons, to the effect that they would safely keep and return the ballot boxes to the city clerk.

Each of the ballot boxes contained, together with said ballots, two poll books or tallying books, together with a certified list of the registered voters in each of the wards. The city clerk took no part in causing the ballots to be printed, but in fact there were two ballots and more than that number for each registered voter in said wards, delivered at the several polling places. On the morning of the election the citizens congregated at the several polling places and, inasmuch as the city council had neglected to appoint election officers, the qualified voters proceeded to appoint such officers as required by law. The election was conducted under these officers and under the preliminary circumstances hereinbefore stated, and the said officers made their returns to the city council, who refused to canvass the same. The above are the more material facts gleaned from the statement of facts in the case. The superior court granted the writ requiring the mayor and councilmen to canvass the returns and declare the result, and they have appealed.

It will be seen from the above statement that the mayor and councilmen wholly neglected to discharge the duties devolving upon them by law, and failed to make provision for the election which the law said should be held. Having so failed in their duty in the first instance, and the citizens having taken the matter in their own hands and having conducted an elec-

tion at the time the law required it should be done, the city's officers now further refuse to canvass the returns. They contend that the relator in the court below, the respondent here, is not entitled to ask a writ of mandate for lack of sufficient interest in the subject-matter. He is a citizen and a voter, and was chairman of the only convention that nominated candidates for the election. What higher interest can anyone have in an election and its result than the citizen and voter? The question is one of general public interest, and in such cases any citizen is beneficially interested and may institute mandamus proceedings. *State v. Tanzey*, 49 Ohio St. 656, 32 N. E. 750; *Clay v. Ballard*, 87 Va. 787, 13 S. E. 262; *State ex rel. Hanna v. Common Council*, 33 N. J. L. 110; *People ex rel. Kelly v. Common Council*, 77 N. Y. 503, 33 Am. Rep. 659; *Moses v. Kearney*, 31 Ark. 261; *State v. Gracey*, 11 Nev. 223; *City of Ottawa v. People ex rel. Caton*, 48 Ill. 233.

The appellants further refuse to canvass the returns on the ground that the election was irregularly held, and they invoke absence of the very statutory preliminaries which they themselves neglected to provide or cause to be observed. The question of the sufficiency of this election is not now before us, but we may remark in passing that, if the election should be void because of the neglect of the city's officers, it would result in those officers perpetuating themselves in office of their own volition and against the expressed will of the people. The genius of our institutions is such that it ought not to be difficult to find a legal way to arrest such a self-perpetuation of public officials. With the regularity or validity of the election, the appellants have, however, nothing to do. It is not for them to refuse to discharge their sworn duties, and then to undertake to assume the judicial prerogative of determining that the election held by the people at the time fixed by law is void, and that too because of appellants' own neglect. Their duties in the premises are purely ministerial. They were advised by the returns that an election was held at the time re-

quired by law, and it is now their duty to canvass those returns and declare the result. This court, in *State ex rel. King v. Trimbell*, 12 Wash. 440, 41 Pac. 183, said:

"On the trial upon the merits the facts as disclosed by the bill of exceptions were substantially agreed to. Therefrom it appeared that, upon the face of the returns returned to the common council, the plaintiffs were entitled to certificates of election, and that those to whom certificates were given were not so entitled; that in making the canvass the common council went behind the returns of the election officers and from an inspection of the ballots cast by the electors determined the result and issued their certificates in accordance with the result so found. From this it will appear that but a single question was presented for decision upon the merits of the case, and that was as to whether or not the common council, as a board for the canvassing of the election returns, was bound by the face of the returns. The trial court was of the opinion that it was, and that upon the agreed facts the board had never made a canvass of the election returns as required by law. In this opinion we concur. That the duty of canvassing boards is purely ministerial and confined to tabulating and ascertaining the result of an election as shown by the face of the returns properly made out by the election officers is well established upon both reason and authority. The election laws place the responsibility of determining the result at each election precinct upon the election officers, and leave to the canvassing board only the duty of ascertaining the result from the returns made by such officers."

See, also, McCrary, Elections (4th ed.), §§ 263, 264, 265.

The judgment of the superior court directing the issuance of the writ of mandate is right, and it is affirmed.

MOUNT, C. J., FULLERTON, CROW, ROOT, and DUNBAR, JJ., concur.