RAMÓN AÑESES ET AL., Plaintiffs and Appellees, *v.* EXECUTIVE COUNCIL OF PORTO RICO, Defendant and Appellant.

No. 4395. Argued March 6, 1928.—Decided May 31, 1928.

*Attorney General George C. Butte* and *Assistant Attorneys General J. A. López* and *Felipe Janer* for the appellant. *Juan B. Soto* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

Sections 12 and 13 of Act No. 63 of the year 1919, Session Laws, pages 354 *et seq.,* so far as pertinent, provide as follows:

"Section 12.—That an Irrigation Commission is hereby created to consist of five persons two of whom shall be appointed by and hold their office at the pleasure of the Governor of Porto Rico; the other three members of said commission shall be elected by the property owners of the irrigable lands lying within the irrigation district, two of whom shall be residents of said district, and they shall hold their offices until the completion of the duties imposed upon said Irrigation Commission by this Act, unless sooner removed by the Governor by virtue of charges of abandonment, negligence, ill behavior or bad faith. . . .

"Section 13.—That for the election of the three elective members of said commission each voter, as hereinafter provided, shall forward to the Executive Council, under sealed envelope, his, her, or its ballot, or ballots, and the election shall be held at such time and under such rules and regulations as shall be fixed by the Executive Council of Porto Rico, and under the following conditions:

" . . . That the vote for said three elective members of said commission shall be forwarded to the Executive Council of Porto Rico, under such regulations and in such manner as the Executive Council shall prescribe; and, generally, the Executive Council of Porto Rico shall have full and plenary authority to provide the necessary rules and regulations concerning the said election, including the power to

determine the validity of the votes cast, and shall canvass and declare the result thereof.''

On the 8th of June, 1926, the Executive Council canvassed an election made under the provisions of the said Act and found that Ramón Añeses Morell had received 219 votes, Francisco Abreu Díaz 198 votes, and Ramón Banuchi 137 votes. The next person in line received 102 votes, and so on down the line. The Executive Council met on the 26th day of October, 1926, and read a report from the Attorney General of Porto Rico bearing date October 25, 1926, to be copied hereafter, in which was expressed the idea that Messrs. Añeses and Banuchi, the mayors of Aguadilla and Isabela, could not legally hold, in addition, positions as commissioners under the Irrigation Act, to which offices the Irrigation Act fixes as compensation a per diem of $12 for each day of actual service.

The petitioners and appellees in this case are respectively the mayors of Aguadilla and Isabela to which the opinion of the Attorney General refers. In the same meeting of the Executive Council, on motion of Mr. Esteves, Commissioner of the Interior, the foregoing opinion of the Attorney General was adopted. There were some subsequent proceedings, but on the 30th of November, 1926, the Executive Council in effect repeated its former decision that Messrs. Añeses and Banuchi were disqualified to serve on the Irrigation Commission.

A petition for mandamus was filed in the District Court of San Juan by the petitioners and appellees and decided in their favor. The Executive Council has appealed and has assigned three errors, none of which clearly raises the principal question which was discussed before the Executive Council, namely, the ability or disability of Messrs. Añeses and Banuchi to draw compensation for two positions or to fill the said two positions. Nevertheless, these matters were argued before us at the hearing and the appellees discuss them in their brief.

Nominally the first assignment of error appears to raise the principal question, but the brief of the appellant in discussing the error limits itself to saying that mandamus will not control or review the exercise of discretion of any board when the act complained of is *quasi*-judicial, or words to that effect. It is conceded and admitted that the petitioners received the necessary votes for election and that they would be entitled to sit on the Irrigation Commission were it not for the disqualification imposed by paragraph 13 of section 34 of the Organic Act. The Executive Council in this case on canvassing the returns was acting as a mere election board. Where no doubts arise as to the due election of certain persons the duties of an election or canvass board are merely ministerial. *State ex rel. Harvey* v. *Mason*, 88 Pac. 126; 9 L.R.A. (N. S.) 1221; 9 R.C.L. 110.

The second assignment of error is as follows:

"The court erred in holding that the writ of mandamus was adequate in the present case, and not a *quo warranto* as was alleged by the defendant and appellant."

The theory apparently is that other persons were occupying the places to be filled by Messrs. Añeses and Banuchi and therefore their right to hold office should have been attacked by a *quo warranto*. The question before the district court and hence before this court was whether the Executive Council could be compelled to declare the election of the petitioners. Their subsequent rights would be a matter of investigation hereafter if other persons should continue to sit on a board to which they had been duly elected. Once the Executive Council should declare the petitioners elected, it may not be assumed that other persons will continue to act on the Irrigation Commission.

Formally the third error was not discussed in the brief of the appellant, except perhaps under the second assignment of error. The appellant alleged that the Governor formed a part of the Executive Council and could not be sued without

his own consent. That a petition in mandamus may be directed against the Governor has been decided several times by this court. *Lutz* v. *Post,* 14 P.R.R. 830; *Jiménez* v. *Reily,* 30 P.R.R. 582. It has also been frequently decided that where the Governor is a member of a particular board, that fact will not prevent an action against the board.

The real question in this case is the interpretation of paragraph 13 of section 34 of the Organic Act, as follows:

"Except as otherwise provided in this Act, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment, nor permit any officer or employee to draw compensation for more than one office or position."

In the opinion of the Attorney General presented to the Executive Council he said as follows:

"This will acknowledge receipt of your letter of June 8, 1926, transmitting to me the following resolution of the Executive Council of the same date:

" 'Whereas, it has come to the knowledge of the Executive Council that two of the three persons receiving the highest number of votes for members of the Isabela Public Irrigation Commission, and who would otherwise be entitled to be declared elected, are acting as mayors of cities, Mr. Ramón Añeses Morell, as mayor of Aguadilla, and Mr. Ramón Banuchi, as mayor of Isabela; and

" 'Whereas, in view of the fact that a legal question arises as to their being qualified to act in the two capacities, that is, as mayors of municipalities and members of the Isabela Public Irrigation Commission,

" 'Now, Therefore, Be it resolved that action be and it is hereby deferred on these two men and the matter referred to the Attorney General for his opinion.'

"The answer to the question presented by this resolution is found in the interpretation of paragraph 13 of section 34 of the Organic Act of Porto Rico, which provides:

" 'Except as otherwise provided in this Act, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment, *nor permit any officer or employee to draw compensation for more than one office or position.'* (Italics mine.)

"It is my judgment that, having regard to the manifest purpose and spirit of this provision, it is to be interpreted to the effect that no person may hold more than one office or position in or under authority of the Government of Porto Rico to which there is a compensation attached by law.

"When the law fixes compensation for an office, such compensation is not intended as a mere gratuity to the office holder, nor as an act of largesse on the part of the legislating body. The compensation is attached to the office for important reasons of public policy, and becomes an integral part of the office. For that reason the compensation attached to an office can not by law be waived by an office holder unless it is so expressly provided. Such would be a palpable evasion of the purpose of the law. The Organic Act does not add to the section quoted: 'Provided, however, that any number of offices may be held by one person if he waives the compensation of all but one office,' and we have no right to insert such a proviso by implication. If an office holder could waive the compensation attached to one or more offices, it is conceivable that he could hold not only two offices, but any number of offices under the Government of Porto Rico, retaining the compensation of only one of them. In my opinion, the Organic Act never intended to permit such a situation.

"The municipalities of Porto Rico are created by and derive all their rights and powers from our Organic Act and the Insular laws. The compensation that attaches to municipal offices is authorized by Insular statute, and the municipal assemblies fix the amount under such authorization.

"Interpreting as I do the Organic Act to mean that no person may hold more than one office or position to which any law attaches a compensation, it is my judgment that the mayors of Aguadilla and Isabela can not legally hold in addition positions as commissioners under the Irrigation Act, to which office the Irrigation Act fixes a compensation and per diem of $12 for each day of actual service.

"Respectfully,

"(Signed) George C. Butte,
"Attorney General."

The principal contention of the appellees is that the two positions are compatible and that when two positions are compatible a provision like that of section 34 is not applicable,

citing the decision of the Supreme Court of the United States in the case of *U. S.* v. *Saunders,* 120 U. S. 126, and other cases. The *Saunders Case* involved the construction of the following sections of the Revised Statutes:

"Sec. 1763. No person who holds an office, the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars, shall receive compensation for discharging the duties of any other office, unless expressly authorized by law.

"Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other Department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.

"Sec. 1765. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation."

The Court said:

"We are of opinion that, taking these sections all together, the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his Department, or in any other mode, added to or connected with the regular duties of the place which he holds; but that they have no application to the case of two distinct offices, places, or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time. In the latter case, he is in the eye of the law two officers, or holds two places or appointments, the functions of which are separate and distinct, and, according to all the decisions, he is in such case entitled to recover

the two compensations. In the former case, he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it is so provided by special legislation."

Other reasoning and other decisions are collected in the case of *Lindsley* v. *City and County of Denver*, 172 Pac. 710.

Counsel from the office of the Attorney General had apparently argued that section 34, *supra*, prohibited any officer from drawing compensation for more than one office or holding more than one office, but counsel for the appellees draws attention to the fact that similar words were contained in section 1764 of the Revised Statutes, *supra*. From the language of Mr. Justice Miller in the *Saunders Case, supra*, we deduce that the prohibition of sections 1763, 1764 and 1765 were enacted to prevent any person who filled a single position from drawing the compensation belonging to any other position unless he was duly appointed or elected to such other position. Under the common law, without any necessity of the statutory declaration, no person had the right to fill two incompatible positions, but if the positions were compatible there was nothing in the law to prevent their being held by a single person. Numerous citations may be found in the books of positions held by the courts to be compatible one with the other. Note to *Peterson* v. *Culpepper*, 2 A. & E. Ann. Cas. 380; 22 R.C.L. 412.

The wording of section 34 is somewhat different from any of the wording of sections 1763, 1764 or 1765, *supra*. When Congress has said "nor permit any officer or employee to draw compensation for more than one office or position," it might perhaps be a more sweeping prohibition than any of those contained in the cited articles from the Revised Statutes. Nevertheless, we think the authority and reasoning of *U. S.* v. *Saunders, supra*, is applicable.

Somewhat more technically perhaps it may be said that the prohibition only extends to the Legislature. Section 34 applies entirely to legislative acts, and paragraph 13 specif-

ically means that no law shall permit any officer or employee to draw compensation for more than one office or position. The Legislature is prohibited from passing such a law. If it attempted to pass such a law it would be unconstitutional and hence no person could draw a compensation thereunder. However, if the positions are not incompatible by themselves and the Legislature has taken no step, the prohibition of section 34 is inapplicable.

These constitutional provisions have been held by the great weight of authority not to be applicable to municipal positions. *State* v. *Townsend,* 72 Ark. 180; 2 Ann. Cas. 377; 22 R.C.L. 415.

The idea of the Organic Act primarily was to consider positions held directly under The People of Porto Rico.

Coming again to the question of incompatibility, it is evident not only that between the duties of a mayor and the duties of an irrigation commissioner no such incompatibility exists, but in point of fact it would be highly advisable that the mayors of the towns most concerned should have a chance to sit with others on an irrigation commission.

While we desire to base our decision on the foregoing grounds, yet we think the actions of the Executive Council and the Attorney General were premature. Not only have Messrs. Añeses and Banuchi not attempted to draw any extra compensation, but they have not had a chance to qualify. *Non constat* that they could not accept the position of irrigation commissioners, and *non constat* that they might not possibly resign as mayors. Each of them might serve perhaps without compensation. The position of the Executive Council and the Attorney General appears, therefore, to be academic.

It seems well to add in this connection that if two positions are incompatible, then, as held by the great weight of authorities, the acceptance of the second position vacates the office of the first. *Howard* v. *Harrington,* L.R.A. 1917 A, 211; Note Ann. Cas. 1915 A, 532; 22 R.C.L. 418.

So that the inconsistency would arise, if any could arise, in the event of Messrs. Añeses and Banuchi continuing to hold the offices of mayor of their respective communities. Even in the extreme case that we are supposing it would appear that the municipality ought to be the one to complain rather than The People of Porto Rico.

The judgment appealed from will be affirmed.

Chief Justice Del Toro and Justice Hutchison concurred in the judgment.

### CONCURRING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I concur in the first part of the opinion of the court delivered by Mr. Justice Wolf. It is evident that the writ of mandamus is the adequate remedy in this case.

I do not agree that the jurisprudence established by the National Supreme Court in the case of *United States* v. *Saunders,* 120 U. S. 126, is entirely applicable. In my opinion both the phraseology and the spirit of the provisions of law interpreted by the Supreme Court in that case are distinct from the wording and the spirit of paragraph 13 of section 34 of the Organic Act in force in Porto Rico.

However, I am of the opinion that the judgment appealed from should be affirmed because it has not been shown that the offices of mayor filled by the petitioners are incompatible with that of Irrigation Commissioner to which they were elected. The prohibition of the Organic Act is that no person shall receive compensation for more than one office or position.

There are incompatible offices that clearly can not be filled by the same person without detriment to one of them, but that does not always occur. A mayor desirous of doing his duty has much to do however small the community in which he holds office, but the public service would not suffer because he may attend from time to time the sessions of the Irrigation Commission. On the contrary, in the body of the Commission he would be occupied in a work which if conscien-

tiously done would surely be of great benefit to the community, in a field of action similar to his activities as mayor.

What Congress established as the public policy to be followed in this territory in prohibiting its Legislature to enact any law permitting any officer or employee to receive compensation for more than one office or position was that very thing, that is, to prevent the occurrence of such a thing in practice and, should it occur, that it may be stopped as illegal.

I repeat that the prohibition does not consist of holding two or more offices which are not incompatible. The express prohibition is the receipt of compensation for more than one office or position. Experience shows that not only in emergencies, but in ordinary circumstances of our life already strenuous and complicated, men of real worth and full of public spirit fill efficiently besides their main occupations not one but several positions in important public commissions to which they apply all the spare time at their disposal. To construe the Organic Act in the sense of prohibiting the holding of those other positions without any compensation merely because the law or the regulations fix a *per diem* to the commissioners would be not only to go against the letter but against the spirit of the law and against the welfare of the community.

What was meant to prohibit and has been prohibited is the receipt of more than one compensation, for although that might be right and just in many cases, it would degenerate into an immoral practice injurious in every sense to the public service.

As to the view that the preponderance of authorities favors the construction that these constitutional precepts are not applicable to municipal offices, it will be sufficient to say that the law in force in Porto Rico is too broad to admit such a restrictive interpretation. It is the Legislative Assembly of Porto Rico which is called to legislate on everything concerning the municipalities of the island and if it can not enact

any law authorizing such practice in them, the conclusion is clear that the rule of public policy established includes both the insular and municipal governments.

By virtue of the foregoing I am of the opinion that the petition should be denied and the decision appealed from affirmed for the reason that as petitioners Añeses and Banuchi can hold their offices without receiving any *per diem* or compensation, the Executive Council should not refuse to issue to them the election certificates required in order to take possession of their offices.

I am authorized to say that Mr. Justice Hutchison concurs in this opinion.