[No. 10931.  *En Banc.*  January 3, 1913.]

The State of Washington, *on the Relation of G. W. Sampson, Plaintiff,* v. The Superior Court for King County, *Respondent.*[1]

Elections—Special Election — Notice — Necessity.  Where no notice of a special election to fill a vacancy was given, as contemplated by statute, and a candidacy therefor was kept secret, thirteen votes by stickers, out of a total of thirty-two thousand electors voting for other officers at the general election, held at the same time, is not such an expression of the popular will as to amount to an election to such office, or such as would dispense with the necessity of giving notice of the special election for that office.

Certiorari to review a judgment of the superior court for King county, Albertson, J., entered November 29, 1912, dismissing an action for a mandamus to secure a certificate of election.  Affirmed.

*Kitt Gould,* for relator.

*John F. Murphy* and *Robert H. Evans,* for respondent.

Morris, J.—Relator sought a writ of mandate in the lower court, requiring the county auditor to issue to him a certificate of election to the office of judge of the superior court of King county, for a short term, beginning November 5, 1912, and ending January 13, 1913.  The writ was denied below, and relator now comes to this court and sues out a writ of certiorari to review the action of the lower court.

There is no dispute as to the facts.  At the last general election in King county, nine judges of the superior court

[1]Reported in 128 Pac. 1054.

were elected for the full term commencing January 13, 1913. Four judges of that court were then serving by executive appointment; one being appointed to fill an additional judgeship created by the last preceding legislature, two being appointed to fill vacancies created by resignation, and one to fill a vacancy created by death. The only notice or call for the election of judges was that of the general election at which nine were to be elected for the full four-year term. Relator, holding the opinion that, under the Constitution, art. 4, § 5, providing that, in case of a vacancy "in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election; and the judge so elected shall hold office for the remainder of the unexpired term," the term of these appointed judges expired at the general election on November 5, caused stickers to be printed and distributed among his friends, reading: "For judge of the superior court of King county, Washington, for the short term from November, 1912, to January, 1913, G. W. Sampson." Thirteen ballots containing these stickers were voted. Relator filed no declaration of his candidacy with the county auditor prior to the primary election held in September, and received at that election no votes placing him in nomination for the office of judge; neither did he attempt to have any notice of his candidacy given, other than the distribution of these stickers. In fact, he admits on the argument here that he sought the utmost secrecy in announcing his candidacy, and that his efforts outside of the distribution of these stickers were devoted to concealing rather than extending notice of his candidacy. That the electors were generally ignorant of the fact that they were to be called upon to elect a successor to any of these appointed judges, for a short term between the date of the general election and the beginning of the regular judicial term on the second Monday of the following January, is evident from the fact that, out of the 391 voting

precincts in the county, votes were cast for relator only in seven precincts, and that out of approximately thirty-two thousand judicial ballots cast in the county for judges of the superior court, relator received only thirteen votes.

A number of interesting legal questions are submitted to us by the briefs and arguments; but, as we view it, one is so determinative of the relator's rights that it, only, need be discussed, and that is the lack of notice. It will be conceded that, while the election of November 5 was, so far as it related to state, county and precinct officers, a general election, called and held pursuant to the required notice, any election, although held at the same time and place to fill any vacancy in any office, would be a special election under § 4782, Rem. & Bal. Code, providing that "Special elections are such as are held to supply vacancies in any office, whether the same be filled by the vote of the qualified electors of the state, or any district, county or township, and may be held at such times as may be designated by the proper officer." The last clause would seem to indicate that, whenever a special election is to be held, the time for holding such an election shall be designated by the proper official. This is borne out by § 4784, providing that at least fifteen days' notice shall be given of any special election, by posting notices.

Relator seeks to evade the lack of notice in this instance by a contention that notice is directory merely, and any failure to give it would not render an election void, and cites *Seymour v. Tacoma*, 6 Wash. 427, 33 Pac. 1059, and *Hesseltine v. Wilbur*, 29 Wash. 407, 69 Pac. 1094. In both of these cases notice was given. In the first case the notice was less than the required time, while in the latter case it was published thirty days when the statute required a publication of only ten days; and in both cases it was held "that the formalities of giving notice, although prescribed by statute, are directory merely." It will be noted in examining those cases that in neither of them was any suggestion made in the complaint that the electors did not have sufficient notice of the

election, and knowledge of the propositions to be voted upon, to act and vote intelligently, which is the primary reason for requiring notice. In the *Seymour* case, it is said that the complaint "does not contain a single word to the effect that in any respect the election was otherwise than a fair, full and free expression of the popular will;" and Dillon on Municipal Corporations, § 197, n. 3, is quoted to the effect that an election is not to be set aside for a mere informality or irregularity which cannot be said in any manner to have affected the result of the election. Neither is any question suggested in the *Hesseltine* case, but that the electors were fully informed of the questions to be submitted to them, and of the time and place when they would be called upon to express their will. Rather does the contrary appear, from the fact that all but eight electors voting at such election voted in favor of the proposition submitted. It is apparent from a glance at the facts submitted here that the same reasoning inducing the court to hold that in each of those cases the irregularity in the notice did not prevent a full and fair expression of the popular will, could hardly obtain in a case where only thirteen out of over thirty-two thousand electors had apparently any information or knowledge that they were called upon to elect a judge of the superior court for a short term between November 5 and January 13 following. Such an expression could hardly be said to be an intelligent expression of the popular will, which is the real test moving all courts in holding that, unless the contrary appears, mere irregularities should not be held to defeat and set aside the popular will. This is clearly pointed out in *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39, where it is said:

"The rule established by an almost unbroken current of authority is that the particular form and manner pointed out by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient. The vital and essential question in

all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election."

The same rule is announced in *Murphy v. Spokane,* 64 Wash. 681, 117 Pac. 476, where it is said:

"The purpose of an election, whether for men or for measures such as the one before us, is to give effect to the voice of the people; and when the people have spoken, their verdict should not be disturbed by the courts, nor the election in which they have voiced it held void unless it is clearly so."

Reference is then made to McCrary on Elections, § 225, for the proper test in determining whether the omission of any particular requirement not made mandatory by the express language of the election statute shall render the election void, and this test is said to be that the requirements of the statute are to be held mandatory if they do, and directory if they do not affect the actual merits of the election. These authorities are almost conclusive against the validity of this election, without notice of any character. It would be ridiculous to say that, under the circumstances here shown, the voice of the people had spoken and it was the duty of the court to give effect to that voice, or that the omission of notice did not affect the actual merits of the law's requirement that the result shall show that the election gave to each elector an opportunity to cast an intelligent vote. We could hardly assume that, in a county where over thirty-two thousand electors had expressed a choice as between eighteen different candidates for the office of superior judge, only thirteen of those electors were interested in expressing a choice for a judge of that court for the term for which relator claims to have been elected.

Relator cites no case where any court has departed from the reasoning we have given. The authorities relied upon by him, where failure of notice has been held not to invalidate an election, are cases where it is apparent from the facts that the

failure to give notice did not prevent a fair expression of the popular will, as in *State ex rel. Malloy v. Skirving*, 19 Neb. 497, 27 N. W. 723, where the court says:

"Here it seems to have been generally understood by the electors of the county that a vacancy existed, and they sought to fill said vacancy, nearly all those voting at that election casting their ballots for one of the candidates named;"

or *State v. Thayer*, 31 Neb. 82, 47 N. W. 704, where, although no special election was called to elect a judge to fill an unexpired term created by the resignation of the incumbent, the several political parties made regular nominations of candidates for such office, and it was stipulated that the electors voted for such candidates for such office. Reliance is also had upon *City of Lafayette v. State ex rel. Jenks*, 69 Ind. 218, where it was held that, under an act authorizing cities to construct water works and providing for the establishment by the common council of a board of three trustees, and for the election of such trustees, the establishment of such a board was not a necessary prerequisite to the election of the three trustees, and that want of notice of the election did not nullify the election. The opinion proceeds upon the theory that the fact that the people were ignorant of the law and its provisions could not invalidate the election because it was ignorance of a matter of law rather than one of fact, and that the people were bound to take notice of the existence of the law, and of the election of trustees to be held under it. The court then proceeds to distinguish ignorance of law from ignorance of fact in such cases, and as illustrating ignorance of fact, *Foster v. Scarff*, 15 Ohio St. 532, is cited, a case where a probate judge had died in office, and the governor had made an appointment to fill the vacancy. Afterwards a general election was held, at which it was proper to elect a probate judge. Proper notice was given of this election, but the office of probate judge was not included in the notice. The great mass of voters were ignorant of the fact that any one was being voted for for probate judge, until about three

o'clock on the day of the election, and Foster, the plaintiff, who claimed the election, received less than one-quarter of the votes cast at that election. The election was declared invalid. The Indiana court says this was a proper decision, because in that case the ignorance was one of fact, and the voters were bound to know that the term of office of probate judge was three years—that was a matter of law; but they were not bound to know when the office had been filled, and when the incumbent's term would expire—that was a matter of fact. The other case there cited as illustrating ignorance of fact is *State ex rel. Chase v. McKinney*, 25 Wis. 416, where the fact that a vacancy existed in a county office was not known to any considerable portion of the electors of the county, and no public notice was given before the election, officially or otherwise, that such office was to be filled; and the great body of the electors, voting for other offices, did not vote for any person to fill said office, and it was held that the election was invalid. If we accept the Indiana court's ruling as authoritative, there would seem to be no question but that the case before us falls within the exception as a mistake of fact rather than one of law. It would be hard to distinguish the Ohio case and the Wisconsin case from the one at bar. The authorities leave little doubt as to the proper rule of law to be applied in cases of this character. In *People v. Porter*, 6 Cal. 26, involving an election to fill a vacancy in the office of county judge, the law there providing that vacancies in such offices shall be filled by election at the next general election after the vacancy occurs, and that notice of election shall be given, no notice was given and it was held the election was void on that account. The court concedes the general rule that the requirement of notice is directory, and that failure to give such notice will not vitiate an election, and then holds that such rule applies only to general or regular elections, and says:

"But it has nowhere been decided that such notice is not essential to the validity of all special elections. . . . It

is essential to the proper exercise of the elective franchise, that the voters should be informed of the offices in which vacancies have occurred, before each general election in order that they may select fit and proper persons to perform the duties of such offices."

The court then evidences the necessity for so holding by referring to the fact that more than four thousand votes were cast at the election, but only twelve hundred were cast for the office in question. If such reasoning impelled that court to so hold, what should be said of a judicial election where more than thirty-two thousand votes were cast out of which the claimant received thirteen? Another California case is *People ex rel. Leverson v. Thompson,* 67 Cal. 627, 9 Pac. 833, where it is said:

"Notice to the electors lies at the foundation of any popular system of government. It has sometimes been held that the existence of a law fixing the time of an election, and the offices to be filled, is of itself notice. It may be conceded that when a term of office is to expire at a certain date after a general election, no other election to intervene, the electors take notice the office is to be filled at such general election. Some decisions have gone so far. But it is well settled that when a vacancy has occurred by reason of death or resignation, the voters are not bound to take notice of such vacancy, and the casting of votes for a candidate or candidates to fill the vacancy does not constitute an election."

*State ex rel. Bolton v. Good,* 41 N. J. L. 296, lays down the same rule. *Cook v. Mock,* 40 Kan. 472, 20 Pac. 259, holds notice essential in case of special elections to fill vacancies, and says:

"The electors may well be presumed to know when the regular terms of city offices begin and end. They usually do know it, in fact, but in respect to vacancies it is entirely different."

*People v. Kerwin,* 10 Colo. App. 472, 51 Pac. 530, is a similar case, as is also *Secord v. Foutch,* 44 Mich. 89, 6 N. W. 110. In *Wilson v. Brown,* 22 Ky. Law 708, 58 S. W. 595, we have a case very similar to the one before us. An election as

circuit judge of Kentucky was claimed by one who had pro-
vided stickers to be voted at a general election, at which time
the office was being held by one who had been appointed to
fill a vacancy. There was no notice, and the people were ig-
norant of the fact that such an office was to be filled. The
court, after laying down the general rule referred to in the
foregoing cases, uses this very pertinent language:

"Under this rule, it seems clear to us the election of appel-
lant must be held void on the facts stated in the answer. The
constitution requires the circuit judges to be elected by the
people, and it contemplates that they shall have a fair oppor-
tunity to express their choice in the selection of this officer,
in many respects the most important to them of all the officers
for whom they vote. It would be a manifest perversion of the
constitution to allow a man to secure this office on the vote of
94 persons out of a total of something like 12,000, by means
of pasters stuck on the original ballots, when there had been
no proclamation for the election, and the voters were in ignor-
ance that the office was to be filled."

Many more cases might be cited, but it seems to us so clear
that this election claimed under such circumstances, cannot
be upheld that we refrain from longer discussion. Relator's
candid assertion that he sought secrecy rather than publicity,
and that his endeavor was to keep the knowledge of his can-
didacy away from the people rather than impart it to them,
in order that he might have no contest, and that the votes of
the few friends to whom he confided his scheme, might be suffi-
cient to insure his elevation to such an important office, with
the receipt of thirteen votes out of thirty-two thousand bal-
lots cast, puts this case within the rule we have asserted upon
stronger reasoning than any case we have examined. If an
election could be upheld under such circumstances, then those
laws which seek to make the matter of elections one of great
general public moment, in order that the people may have the
fullest opportunity to intelligently select those who shall rule
over them, might as well be read out of the law. Relator cites
*State ex rel. Harvey v. Mason*, 45 Wash. 234, 88 Pac. 126,

as authoritative of his contention that notice was unnecessary. That case, however, when properly read, can bring him no comfort, notwithstanding the fact that the election was sustained without notice. The election there sustained was the regular municipal election held on the day provided by law for the election of officers in cities of the third class. The city council neglected to cause notice of the election to be given. The citizens, however, held a mass convention at which nominations were made for the various municipal offices, and on the day of the election the citizens generally participated in the election. The only question presented to the court was an application for an order requiring the mayor and common council to canvass the returns and declare the result, which order was granted below and sustained here. The sufficiency of the election was not before the court. It was, however, said that:

"If the election should be void because of the neglect of the city's officers, it would result in those officers perpetuating themselves in office of their own volition and against the expressed will of the people."

that they had no "judicial prerogative of determining that the election held by the people at the time fixed by law is void;" and that their duties were purely ministerial. That case is in perfect harmony with the views we now express and the cases we cite in support of our holding, for the reason that the election was held at the time fixed by law to elect officers, who under the law were then required to be elected. The electors, as is said in *Cook v. Mock, People ex rel. Leverson v. Thompson, supra,* and the other cited cases, were presumed to know when the regular term of their municipal officers expired. That was, as is said in *Lafayette v. State, supra,* knowledge of a matter of law of which courts would presume the people had full knowledge. It was not, as that court also says an instance of a vacancy in office, which would be a question of fact concerning which knowledge would not be presumed. It also appears in that case that the people had

actual knowledge of the election and generally participated therein so that none of the reasoning applied to the facts before us would suggest a different holding from the one there made. The rule which we now announce and the *Harvey* case need no distinguishing, for they proceed along different lines and are based upon different facts. Neither is it necessary for us to refer to *State ex rel. Linn v. Millett*, 20 Wash. 221, 54 Pac. 1124; nor to *State ex rel. Murphy v. McBride*, 29 Wash. 335, 70 Pac. 25, to discuss whether or not there were vacancies in these four judicial offices which it was required should be filled at the November election; since the only question we have to determine is whether or not relator was duly and properly elected to fill one of these vacancies. If he was not, then it is immaterial how long the appointed judges held office under their appointment since, whatever the time was, they would hold until their successors were duly elected and qualified. Relator was, for the reasons we have given, not "duly elected" as a successor to either of them, and no other holding is required.

We feel that we have said all that is required to be said to sustain our ruling and the judgment is affirmed.

MOUNT, C. J., CROW, PARKER, GOSE, FULLERTON, and CHADWICK, JJ., concur.

MAIN and ELLIS, JJ., took no part.