STATE EX REL. ROWE, RELATOR, v. KEHOE, COUNTY CLERK, RESPONDENT.

(No. 3,568.)

(Submitted October 27, 1914. Decided November 17, 1914.)

[144 Pac. 162.]

*County    Officers—Sheriffs—Vacancies—Appointees—Tenure—
Statutes—Constitution—Words and Phrases—Interpretation
—Rule—Boards of County Commissioners—Powers and Duties
—General and Special Elections—Proclamation and Notice—
Ballots—Injunction.*

County Officers—Vacancies—Appointees—Tenure—Statutes—Unconstitutionality.

1.   Under section 5, Article XVI, of the Constitution, declaring that the appointees to vacancies in county offices [exclusive of county attorney, clerk of district court and justice of the peace] shall hold until the next general election, *held* that section 1 of Chapter 5, Laws of 1913, which extends the tenure of such appointees "until the first Monday in January next after a general election," is invalid.

(MR. JUSTICE SANNER not concurring.)

Constitution—Interpretation—Rule.

2.   The words used in the Constitution are presumed to have been employed in their natural, ordinary sense, and must be so taken and understood unless the context in which they occur requires that they be assigned a different meaning, or other provisions on the same subject limit, qualify or enlarge their scope.

County Officers—Vacancies—Power to Fill.

3.   Though the general power lodged in the board of county commissioners to fill vacancies in county offices must be narrowly construed, yet in case of a vacancy in an office the filling of which is not specifically provided for, the board should exercise its power in order to prevent an interregnum in the office and the consequent suspension of the public business.

Same—Vacancies—Duty of County Commissioners.

4.   *Held*, under sections 451, 453 and 455, Revised Codes, that in case of vacancies in county offices, boards of county commissioners have the power, and it is their duty, to call and provide for the holding of special elections to fill them.

Elections—Statutes Regulating Mode Necessary.

5.   In the absence of statutory provisions regulating the mode and manner of elections, the people, though entitled under the Constitution to elect their own officers, cannot exercise such right.

[As to irregularities that will avoid an election, see note in 90 Am. St. Rep. 46.]

Same—General and Special Elections—Presumptions.

6.   While electors are conclusively presumed to know the time for holding general elections as well as what officers are to be elected, they may

not be charged with knowledge of the fact that a vacancy has occurred which they may fill on the same day a general election takes place.

Same—Special Elections—Proclamation and Notice—Ballots—Injunction.
  7. *Held*, on application for injunction, that where the board of county commissioners had failed to proclaim and give notice of a special election to fill a vacancy caused by the removal of a sheriff, to be held on the day a general election was to take place, the county clerk was without authority to place upon the ballot the name of any candidate for the election to fill such vacancy.

  [As to necessity for notice or proclamation of election, see note in 120 Am. St. Rep. 794.]

Original application for an injunction by the state on the relation of James H. Rowe, to restrain Dave Kehoe, as county clerk and recorder of Silver Bow county, from placing certain names on the official ballot.   Writ issued.

*Mr. Henry C. Smith,* for Relator, submitted a brief and argued the cause orally.

*Messrs. Nolan & Donovan,* for Respondent, submitted a brief; *Mr. Louis P. Donovan* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Original application for an injunction.   On September 10, 1914, Timothy Driscoll, who had theretofore been elected to the office of sheriff of Silver Bow county for the regular term of two years ending on the first Monday of January, 1915, was by a judgment of the district court of that county removed from office on the ground that he had been guilty of neglect in the performance of his official duty.   On October 6 it was brought to the attention of the board of commissioners of the county, then sitting in regular session, that a vacancy existed in the office.   Thereupon the board made an order appointing one John Berkin to fill the vacancy until his successor should be elected and qualified.   Berkin at once qualified and entered upon the performance of the duties pertaining to the office, and was holding the office at the time this proceeding was instituted. On October 13, more than twenty days prior to the general elec-

tion to be held on November 3, Joseph P. Nolan, conceiving that Berkin's tenure of office would end on the day of the election, and that there would exist from that date until the first Monday in January, 1915, a vacancy to be filled by the electors at the general election, filed with the defendant clerk a petition signed by the number of electors required by section 524 of the Revised Codes, reciting the facts required therein to be stated, nominating himself a candidate for election to succeed Berkin. On the same date Berkin filed a similar petition naming himself as candidate for election to fill the same vacancy. The petitions designated both Nolan and Berkin as independent candidates. Both are qualified to hold the office. Though there are organized political parties in Silver Bow county, no one of them attempted to nominate a candidate, for the reason that the date for holding primaries had passed when the order was made removing Driscoll. The board of commissioners had not at the time the petitions were filed ordered, nor did it thereafter order, a special election to be held on November 3 to fill any vacancy in the office; nor had it then made, nor did it thereafter make, proclamation of such an election nor cause notice thereof to be given by publication in a newspaper or posting notices at the voting places in the county. When the time arrived at which it became the duty of the clerk to prepare the ballot for use by the electors on November 3, notwithstanding no special election had been ordered or proclaimed, he was proceeding to put upon it the names of Nolan and Berkin as independent candidates. Thereupon this proceeding was brought to restrain him from so doing, on the grounds (1) that there would be no vacancy to be filled for the time intervening between the date of the election and the beginning of the regular ensuing term on the first Monday in January, 1915, because Berkin would hold under his appointment, until that date, and (2) that, though Berkin's tenure of office would end on the day of election, the clerk was not authorized to put upon the ballot the name of any candidate for election to fill the vacancy, because the board had neither ordered nor proclaimed a special election to be held for that

purpose. After consideration of the provisions of law applicable, the court concluded (1) that the board of commissioners was without authority to appoint Berkin to serve beyond the date of the regular election, because there would occur a vacancy in the office to be filled by the electors at a special election regularly ordered and proclaimed, and (2) that, no proclamation having been made nor notice given of the election, the clerk was without authority to put upon the ballot the name of any candidate for election to fill the vacancy. Accordingly, the injunction was ordered to issue. Because of the near approach of the date of election and the pressure of other business, the court did not have time to state in writing the grounds for these conclusions, and for this reason delivery of the formal opinion was deferred until this time.

The following provisions of the Constitution are pertinent:

"Sec. 34. Vacancies in the office of justice of the supreme court, or judge of the district court, or clerk of the supreme court, shall be filled by appointment, by the governor of the state, and vacancies in the offices of county attorneys, clerk of the district court, and justices of the peace, shall be filled by appointment, by the board of county commissioners of the county where such vacancy occurs. A person appointed to fill any such vacancy shall hold his office until the next general election and until his successor is elected and qualified. A person elected to fill a vacancy shall hold office until the expiration of the term for which the person he succeeds was elected." (Article VIII.)

[1] "Sec. 5. Vacancies in all county, township and precinct offices, except that of county commissioners, shall be filled by appointment, and the appointee shall hold his office until the next general election." (Article XVI.)

Section 2966 of the Revised Codes reads as follows: "All vacancies in county and township offices, except county commissioner, are filled by appointment made by the county commissioners. Appointees hold until the vacancies are filled by election."

Section 1 of Chapter 5 of the Session Laws of 1913, after providing for appointment to fill vacancies in the office of county commissioner, declares: "And any county office that is filled by appointment, the appointee shall hold office until the first Monday in January next after a general election, and until his successor is elected and qualified."

The first Monday in January is the date at which the term of all county officers chosen by the electors begins, except that of treasurer. (Const., Art. XVI, sec. 5; Ord. II, sec. 9.)

It will be noted that the offices of clerk of the district court, county attorney and justice of the peace are enumerated among judicial offices, and are to be excluded from the enumeration of the offices referred to in section 5 of Article XVI of the Constitution, *supra.* Though a vacancy in any of them must be filled by appointment by the board of county commissioners, the tenure of the appointees to them is not in question in this case, section 34, Article VIII, *supra,* being specifically applicable to them. Excluding these from the list of county offices, section 5 of Article XVI, *supra,* refers only to the offices of sheriff, treasurer, county clerk, assessor, auditor, superintendent of common schools, county surveyor, coroner and public administrator.

1. The provision of the Act of 1913 was evidently intended to supplant wholly the provision of the Code. This is apparent from the fact that while under the latter the appointee held only until the vacancy could be filled by election, the former extends the tenure until the first Monday in January following the date of the general election. In effect, therefore, it declares that the appointee to a vacancy shall hold until the expiration of the remainder of the current term, without reference to when the vacancy occurs, thus precluding the idea that there may ever be an election to fill a vacancy in a county office of the class referred to in section 5 of Article XVI, *supra.* Doubtless, the legislature, in enacting this provision, proceeded upon the theory that the words of the Constitution, "Until the next general election," ought to be ignored as wholly without meaning, or must be construed as meaning, "until the person elected at the

general election for the ensuing regular term of two years may assume the office,'' or, in the language employed by it in the Act of 1913, *supra,* ''until the first Monday in January next after the general election.'' In *State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94, this court had under consideration the question whether an appointee designated by a district judge to fill a vacancy in the office of county commissioner could lawfully hold for the remainder of the term, or only until the next general election after his appointment. After an examination of all the provisions of the Constitution on the subject of vacancies in office and the tenure of the appointees to fill them, in the light of the legislation on the subject in force at the time the Constitution was adopted, the conclusion was reached that the Constitution, by the use of the expression ''until the next general election,'' intended to adopt and enforce the rule that the choice of public officers shall be made by the people by election whenever convenient, and that appointees to office ought to be permitted only in exceptional cases. Hence it followed that the tenure of an appointee to the office of county commissioner could not extend beyond the next general election, even though the phrase in question expressly limiting the tenure of appointees to fill vacancies in the office of county commissioner is not found in the section of the Constitution providing for the appointment. (Const., Art. XVI, sec. 4.) After further consideration of the subject, we are satisfied that the conclusion reached was correct and that it is determinative of this case. Any other conclusion would nullify the provision entirely.

In the interpretation of constitutions the cardinal rule to be [2] observed is: that words are presumed to have been employed in their natural, ordinary sense, and are to be so taken and understood unless the context in which they occur requires that they be assigned a different meaning, or other provisions on the same subject limit, qualify or enlarge their scope. (Story's Constitution, sec 451.) There is nothing in the context in which the expression in question appears in section 5 of Article XVI, *supra,* to indicate that the convention intended to use

it in any sense other than that expressed by it, as the ordinary person would understand it. ''Until'' is a word of limitation, used ordinarily to restrict that which precedes to what immediately follows it. Its office is to fix some point of time or some event upon the arrival or occurrence of which, what precedes will cease to exist. (*Maginn* v. *Lancaster,* 100 Mo. App. 116, 73 S. W. 368; *People ex rel. Woods* v. *Crissey,* 91 N. Y. 616; *Croco* v. *Hille,* 66 Kan. 512, 72 Pac. 208; *Jones* v. *Sizemore,* 25 Ky. Law Rep. 1957, 79 S. W. 229; *State ex rel. Watson* v. *Cobb,* 2 Kan. 32; 8 Words and Phrases, 7217.) Therefore, as the date mentioned by which the tenure of the appointee is limited is that fixed by law for the holding of the general election—that is, the first Tuesday after the first Monday in November of the alternate years, beginning with the year 1894 (Rev. Codes, sec. 450), such tenure must end on that date. So, too, the ordinary man on the street, in referring to the date of the general election, would mean, and would be understood to mean, the day of the month on which the election happens to occur, and not any other day.

Upon referring to the provision applicable to state, executive and judicial offices, it will be observed that the appointee to a vacancy in any of them holds until his successor is elected and qualified. Here the same restriction is imposed upon the tenure, though the date to which the limit extends is not definitely fixed. That the length of tenure in case of these offices is left indefinite and is made dependent somewhat upon the disposition of the newly elected incumbent to assume his duties, is not any reason why the tenure of the appointee to fill a vacancy in a county office *eo nomine,* should be held to be other than what the convention declared in plain terms it shall be. It is not for the courts to inquire what the purpose of the convention was in making different provisions for these different classes of offices, and by a process of construction undertake to declare that the convention intended to convey a meaning which its words do not express. When the courts have ascertained what the convention said and its language is clear and unambiguous, and not limited or qualified in meaning by context or by other provisions on the

same subject, the duty to interpret does not arise. The language is to be taken to mean what it says and nothing more, even though they may entertain the opinion that some other provision than the one under consideration would have been wiser.

Accordingly, since the convention declared that one appointed to fill a vacancy in a county office shall hold until the next general election, it is our duty to so declare. It was, therefore, out of the power of the legislature to ignore the provision in question and provide that appointees to fill vacancies should hold for the remainder of the regular term. Hence it follows that the Act of 1913, *supra,* is invalid, because it undertakes to extend the tenure beyond the limit fixed by the Constitution. (Mechem on Public Officers, sec. 386.) As to the office of county treasurer, it is wholly inoperative, because, since the term of this office begins on the first Monday in March, to apply the statute to it would create an interregnum for the two months following the beginning of the regular term of other offices. In enacting it, the legislature evidently entirely overlooked this office.

The provision in question does not declare that an election shall be held to fill the vacancy for the remainder of the term. [3] It is silent on the subject. There is no other provision in the Constitution on the subject. In view of the express limitation of the appointing power, however, and the evident purpose that appointment to office should be the exception and that the people should elect their own officers whenever convenient, it is clear that the convention intended that the remainder of the current term should be provided for by election. It was thus left to the legislature to enact the measures to carry out this intention. This it has undertaken to do, as we shall hereafter show. It may happen that if the officers vested with the authority to order and give notice of an election, fail in their duty, a second vacancy will arise upon the occurrence of the election. Also a vacancy may occur by death, resignation or removal from office after election. The convention seems to have overlooked these contingencies; but certainly no one would insist that in such a case the vacancy, with the attendant

inconvenience to the public, must continue for the remainder of the current term, merely because one appointed to fill it cannot hold until a general election within the meaning of the Constitution. So, too, a vacancy may occur before the election, but within a time too short to permit an election to he held. The fact that one appointed to fill the office would have to be reappointed after the election is no reason why the vacancy should not be filled. Upon the happening of any of these contingencies it would be the manifest duty of the board of commissioners to fill the vacancy. The general power to fill vacancies is lodged in the board, and though such power is always to be narrowly construed (28 Cyc. 1402), in case a vacancy is not specifically provided for, it should be exercised in order to prevent an interregnum in the office and the consequent suspension of the public business. And though it may happen that the proper officer or authority may omit to call an election or cannot do so under the particular emergency, nevertheless the board need not by subsequent neglect or nonaction permit the public business to be suspended. Upon the happening of either contingency, the appointed incumbent, as temporary *locum tenens,* must perform the duties of the office until his successor has qualified (Rev. Codes, sec. 355; *State ex rel. Neill* v. *Page,* 20 Mont. 238, 50 Pac. 719), so that an interregnum can never happen in any public office.

2. In his brief, and also in his oral argument, counsel for the relator made the contention that upon the assumption that the electors had a right to elect a successor to Berkin, they could not lawfully exercise it because (1) no provision has been made by the legislature for holding a special election to fill a vacancy in a county office, and (2) because, assuming that such provision has been made, the board of commissioners failed to order and proclaim an election. Counsel for defendant contend that, since the Constitution authorizes the electors to choose their officers at a time designated by law, they were entitled to select Berkin's successor without the formalities of a proclamation and notice.

A general election is one held for the election of officers throughout the state. (Rev. Codes, sec. 450.) A special [4] election is one held to supply a vacancy in a public office, or one in which is submitted to the electors a proposition to raise money for any public improvement. (Sec. 451.) A general election must be proclaimed by the governor at least sixty days before the date fixed by law. A special election to fill a vacancy in the office of state senator or member of the house of representatives must be proclaimed at least ten days before the date fixed for the election, and copies of the proclamation transmitted to the boards of commissioners of the several counties. (Sec. 452.) In either case the proclamation must contain, among other things, "a statement of the time of election, and the office to be filled." (Sec. 453, subd. 1.) Upon the receipt of such proclamation the board may, in case of a general or special election, cause a copy thereof to be published in some newspaper printed in the county and posted at each place of election, at least ten days before the date of election. In case of a special election to fill a vacancy in the office of state senator or member of the house of representatives, the board may, in its discretion, cause the proclamation to be published or posted as above stated, except it need not be published or posted longer than five days before the election. (Sec. 454.) "Whenever a special election is ordered by the board of county commissioners, they must issue an election proclamation, containing the statement provided for in subdivision 1, of section 453, and must publish and post it in the same manner as proclamations issued by the governor." (Sec. 455.)

When all these provisions are read together, the conclusion seems necessary that the legislature intended that special elections to fill vacancies in county offices should be proclaimed and notice thereof given by the board of county commissioners. Apparently, proclamation by the governor is necessary only when an election is to be held to fill offices for the regular ensuing term, except to fill vacancies in the offices of state senator and member of the house of representatives. This is suggested by the fact that section 452 does not impose upon the governor

the duty to call an election to fill any vacancy other than the two mentioned, as well as by the reflection that the governor is not presumed to know what, if any, vacancy exists in any local county office. Section 455 has no reference to elections held for raising money for public improvements referred to in the latter part of section 451. The power conferred in this behalf is exercised under special provisions on the subject, found in the part of the Codes relating to county government. (Rev. Codes, sec. 2933 *et seq.*) The section can have no meaning unless the special elections referred to are to fill vacancies in county offices. By reference to section 453 to ascertain the contents of the proclamation which the board must issue, we find that it must. contain "a statement of the time of election, and the offices to be filled"—matters wholly foreign to a purpose to raise money. Taking the first part of section 451, together with sections 453 and 455, related as they evidently are by the subject matter with which they deal, *viz.,* vacancies in public office, and bearing in mind that the several boards of commissioners are presumed to know what local officers are to be elected, we think it apparent that the legislature intended to confer upon them the power to call and provide for the holding of elections to fill vacancies in county offices. It is true, the legislation is crude and does not by the most appropriate expressions confer this power; nevertheless we think it sufficiently confers the power within the rule that these boards. have only such powers as are conferred upon them by the Constitution and statutes granting and defining their powers.

If it be conceded, however, that these provisions, because of their indefiniteness and lack of directness of statement, fail of their evident purpose to confer the power, the relator was entitled to the relief sought on the ground that, though [5] the people are entitled under the Constitution to elect their own officers, they cannot exercise this right in the absence of statutory provisions regulating the mode and manner of holding elections. (*Sawyer* v. *Haydon,* 1 Nev. 75; *People ex rel. Mc-Kune* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754; *People ex rel.*

*Lynch* v. *Budd,* 114 Cal. 168, 34 L. R. A. 46, 45 Pac. 1060; McCrary on Elections, sec. 142.)

The defendant, therefore, from either point of view, had no authority to put upon the ballot the names of any candidates other than those from among whom the electors were to choose officers for the regular ensuing term to begin on the first Monday in January, 1915.

There is some conflict in the decisions upon the question whether an election to fill a vacancy is valid in the absence of notice by the proper officer or authority. Some courts hold that where the Constitution or statute provides that a vacancy in an office must be filled at the next general election, an election held to fill such vacancy is valid though notice has not been given to the electors. (*People* v. *Cowles,* 13 N. Y. 350; *People ex rel. Speed* v. *Hartwell,* 12 Mich. 508, 86 Am. Dec. 70.) Others adhere to the doctrine that if the proper notice is not given, the election is void. (*Beal* v. *Ray,* 17 Ind. 554; *People ex rel. McKune* v. *Weller, supra; State ex rel. Sampson* v. *Superior Court,* 71 Wash. 484, Ann. Cas. 1914C, 591, 128 Pac. 1054.)

In the consideration of this case, the court reached the [6, 7] conclusion that inasmuch as an election to fill a vacancy is a special election, though to be held at the same time as the general election, and inasmuch as the statute (Rev. Codes, sec. 455) mandatorily requires notice of it to be given by publication and posting at the voting places, and these prerequisites had been entirely omitted by the board of commissioners, the election, if held, would be wholly invalid. As was stated by this court in *State ex rel. Breen* v. *Toole,* 32 Mont. 4, 79 Pac. 403, we do not question the propriety of the rule that previous notice by the proper authority is not necessary to render a general election valid. The law fixes the time for holding these elections and also names the officers to be elected. Of these facts the people may be conclusively presumed to take notice; but they cannot be presumed to know generally that a vacancy has occurred which they may fill at the date of the general elec-

tion, though they are presumed to know the date when the general election takes place. Hence, to say that formal notice by the board of commissioners as required by the statute is unnecessary is tantamount to holding that such information as the one or more condidates may choose to impart to the electors is sufficient to meet all legal requirements, whereas it is often the case, as it was in *State ex rel. Sampson* v. *Superior Court, supra,* that the candidates are more interested in suppressing knowledge of their candidacies than they are to calling them to the attention of the electors. The rule announced in *People ex rel. McKune* v. *Weller, supra,* that the provisions of the statute relating to special elections are mandatory, is sound, and serves best to prevent fraud and imposition which are not only possible but made easy under the other rule.

MR. JUSTICE SANNER: While it is my belief that all questions fairly and properly raised in a cause presented to this court should, as a general rule, be considered and settled, there is always the consideration that an Act of the legislature ought not to be declared unconstitutional unless such conclusion is necessary to the decision. Fully appreciating the objections stated by the Chief Justice to the validity of section 1, Chapter 5, Laws of 1913, I nevertheless feel that the question should be reserved, because the failure of the county commissioners to call and notice the election in question would be fatal, whether a vacancy to be filled was demonstrated or assumed. I therefore place my concurrence in the foregoing opinion upon the ground last treated therein.

MR. JUSTICE HOLLOWAY, being absent, did not hear the argument, and takes no part in the foregoing decision.