Dilley, J.
November 15, 1917, John J. Savu filed a petition in this court alleging that he is a qualified elector of the city of Niles, Ohio, a municipal corporation; alleging further “that a pretended Beal law election was held in said municipal corporation on November 6, 1917, whereunder the question was submitted to the qualified electors of said municipal corporation whether the sale of intoxicating liquors as a beverage should be permitted within the limits of said municipal corporation;” further alleging that upon November 6, 1917, an election was held in said municipal corporation for the purpose of determining that question, and that said election was held on the same day as the regular election provided by law for the election of municipal officers; and that the time of said election was improperly desig *563 nated by the city council of said corporation, claiming that it should have 'been held as a special election on some day other than the general or regular election day and asks that said pretended election be set aside and held for naught.
On same day summons was issued to the sheriff of Trumbull county directing him to notify Charles Crow, mayor of said city of Niles, of the filing of the petition, directing him to appear on behalf of said municipal corporation on November 22, 1917, pursuant to law.
Upon November 20, 1917, the city of Niles, by its counsel,' filed a motion in this court asking that the petitioner make his petition more definite and certain, alleging that “it is unable to tell whether it is claimed that the proper time had not elapsed, whether too much time had elapsed, whether it. is claimed that the proper officials did not act, the action was not proper, or what is claimed. ’ ’
November 22, 1917, both parties being present, motion was overruled, and on the same day 'by leave of court an amended petition was filed instanter by said petitioner alleging substantially the same facts as incorporated in the original petition with the additional allegation that a petition was filed under Section 6127, General Code, October 11,1917, calling for a special election to determine whether intoxicating liquors should be prohibited in said corporation, and that at said election the majority of votes cast were in favor of the prohibition of the sale of intoxicating liquors as a beverege in said municipal corporation.
On the same day the city of Niles filed a demurrer to said amended petition, which was in words, to-wit: “Now comes the defendant, the city of Niles, and demurs to contestant’s petition herein filed and says that the same does not recite facts sufficient to constitute a cause of action.”
The matter then came on to be heard upon the demurrer, and upon arguments of counsel the matter was submitted to the court for consideration.
Section 6127, General Code, provides:
*564 “When, in a municipal corporation divided into wards, qualified electors in a number equal to forty per cent, of the number of votes cast therein at the last preceding general election for state and county officers, or when, in any other municipal corporation, qualified electors equal to forty per cent, of the votes cast therein at the last preceding general election for municipal officers, petition the council thereof for the privilege to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such municipal corporation, such council shall order a special election to be held at the usual place or places for holding elections therein not less than twenty days nor more than thirty days from the filing of such petition with the mayor of such municipal corporation, or from the presentation of such petition to the council thereof. Thereupon, such petition shall be filed as a public document with the clerk of such municipal corporation and preserved for reference and inspection.”
Upon reference to the amended petition, it would seem that there was just one question contended for on part of contestant, and that a question of law as to whether or not the day designated by the city council, being November 6, 1917, and being the same day on which was held the general and regular election for the election of municipal officers, was legally so designated in that under the law it is a special election, and whether the vote thus oast on said day was a legal act and should be sustained by the court or whether it should be declared illegal and held for naught.
Where the Constitution or the act of the Legislature fixes the time for an election, there can ¡be no room for doubt as to that time — that is a mandatory provision. But where by act of the law it limits the time within which an order is to be executed, it is directory. As held in Dayton Petition for Election, 2 N.P. (N.S.), 245, reading from the syllabus, the court holds:
“The provisions of Section 1 of the Brannock law (97 O. L., 87), limiting the time to not less than twenty and not more than thirty days within which the mayor or a common pleas judge shall order a special election upon the filing of a petition for such election as therein provided, is directory and not mandatory.”
*565 Under Section 6127, General Code, which governs a special election, as in this case, providing that the time of the special election be fixed by the city council within a certain period and no time mentioned when the council should fix the date, it was directory only and lay within the discretionary power of said council as to the time when, within such statutory period, said election was to be held. And did they fix the time not less than twenty nor more than thirty days for holding the special election; and in the absence of any mandatory provision to the contrary, is the act of the city council in fixing the sixth day of November for holding the special election, 'being the same day on which the general and regular election was held, contrary to law ?
It might be observed that there is no contention on the part of the contestant that the council in fixing November 6, 1917, as the time for holding said special election did not fix the time as the law provides, not less than twenty days nor more than thirty days from the filing of the petition with the mayor or presentation of the same to the city council. But it is contended by counsel for petitioner, that it was not the legislative intent that a special election such as this one should be held and so designated by the city council for the time of holding said special election upon a regular or general election day, for the reason that the interests of all parties upon the question to be submitted should not be entangled or perhaps confused with other issues to be voted upon that day. And it is contended by counsel for the city that though it is a special election that it was within the right of the council to thus fix the day upon the regular and general election day, contending further that a greater number of electors would respond to their right of franchise upon that day and thereby receive a greater expression of the will of the people.
The court is without much aid from any decisions as laid down by the courts in this or other states adjudicating this specific question. But it is not without some authority, by implication, tending to throw light upon this question.
In State v. Superior Court, 71 Wash., 484, the court, in passing upon the question of a special election to fill vacancy in office, says:
*566 “Providing that special elections are sneh as are held to supply vacancies in office, an election to fill the vacancy on the district bench is a special election though held on the same day as the general election.”
And again, as recited in State v. Kehoe, 49 Mont., 582, the court says:
“An election to fill a vacancy, though held at the same time as the general election, being a special election. ’ ’
And again there is some aid furnished the court in the opinion of Timothy S'. Iiogan, Attorney-General of this state, in construing the laws as to whether 1 ‘ a special election upon the subject of issuing bonds” held at the primaries would be legal; quoting from his opinion as found in 2 Atty. Gen’s. Rep., 1255, he says:
“I find that my predecessor, Hon. U. G. Denman, rendered an opinion to the effect that a special election upon the subject of issuing bonds for the construction of a school building might lawfully be submitted at the date of the primaries, although many inconveniences of such a proceeding were pointed out by him. In his reasoning I concur in spite of the additional point which you suggest in your letter, and which does not appear to have been considered by Mr. Denman.”
While, as stated, there is no specific finding which the court after much research is able to find wherein the court specifically held th'at a special election such as this one held upon the same day as the regular election is a valid election, neither ,am I able to know of any decision which says that it is illegal. But I am able to find in the cases recited that the courts by implication and in words say that “an election to fill vacancies in office, though held upon general election day is still a special election. ’ ’ And the fair inference — in that the courts have not determined that a special election could not be held on that day, but says that it is a special election if it is held upon that day — is that in . the mind of the court, if the election is so held, it would be valid.
*567 But there is a rule of law, I take it, that is well settled as laid down in the ease of Fike v. State, 4 C.C.(N.S.), 81, where the court passing upon an election under the Beal law, reading, from the syllabus, says:
“Election laws are to be construed liberally so as to preserve if possible and not defeat the choice of the people at the election.” i.
But assuming, as alleged in the petition, “that the city council improperly designated the date of the regular election for the holding of the special election, ’ ’ in the absence of any mandatory provision to the contrary and in view of the city council’s discretionary power, could it be said to be more, if at all, than an irregularity?
Based upon this proposition, the court is then confronted with much authority throughout the states that holds irregularities in the conduct of an election which do not affect the results are not ground for declaring an election void.
“ It is the policy of the law to uphold elections for the purpose of advancing educational interest and not to annul them for trivial causes; and mere irregularities in the conduct of an election, which do not deprive the citizens of a full and fair opportunity of voting are not sufficient to annul the election.” Taylor v. Sparks (Ky.), 118 S. W., 970.
And again in Fuerst v. Summler, 28 N. Dak., 411, reading from the second paragraph of syllabus, the court says:
‘ * Irregularities in the conduct of an election by election officers over whom an elector has no control will not ordinarily vitiate the vote of such election, where it appears that he had no knowledge of such irregularity and voted in good faith, and especially it is true as in this ease where no fraud is shown or alleged and there appears to have been a full, free and fair expression of the will of-the electors.”
• The vital question in all cases of election is whether the great body of electors have had full and fair opportunity to express *568 their choice. This rule is laid down in State v. Superior Court, supra.
“This is the real test moving all courts in holding that unless the contrary appears, mere irregularities should not be held to defeat and set aside the popular will.”
And, again, reading from the same opinion, the court says:
“This is clearly pointed out in State v. Doherty, 16 Wash., 382, where it is said, ‘the rule established by an almost unbroken current of authority is that the particular form and manner pointed out ¡by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election .and the questions submitted, this is sufficient. The vital and essential question in all eases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election.’ The same rule is announced in Murphy v. Spokane, 61 Wash., 681, where it is said: ‘ The purpose of an election, whether for men or for measures, such as this one before us, is to give effect to the voice of the people, .and when the people have spoken their verdict should not be disturbed by the courts nor the election in which they .voiced it held void, unless it is clearly so." ”
And again it is stated:
“Whether statutes relating to the time and place of elections are to be construed mandatory or directory, a departure therefrom will invalidate the election only when it makes it impossible or very difficult to determine whether fraud was committed or anything done which would affect the result.” Chenoweth v. Earhart, 11 Ariz., 278.
In view of the fact that there is no allegation made in the petition filed by contestant but what all the acts of the city council up to the time they fixed the day for holding this special election were entirely in conformity to law and without fraud or irregularity, in the absence thereof and in view of the law heretofore cited, the court is of the opinion that the city council in fixing the sixth day of November for holding the special election upon the general and regular election day came within their *569 discretionary powers. And in that there is no allegation in the petition that the electors did not have full and fair opportunity to express their wish, no allegation that the electors were deprived of the opportunity to express their right of franchise sufficient to change the result of the election, the voice of the people having spoken, it would seem to be the duty of the court to give effect to that voice, and not within the purview of the court to disturb that choice.
The demurrer is sustained.