**STATE OF FLORIDA, ex rel., J. Tom Watson, Attorney General, Dewey J. Wilcox, J. R. Merritt, J. B. Brewer, Lane H. Jennings, and Jimmie Barry, v. CLIFFORD F. SCOTT, Angus Sumner, George H. Reid, W. C. Pedrick, Jr., and James B. Rock.**

37 So. (2nd) 330                                    June Term, 1948
October 29, 1948                                    En Banc

*J. Tom Watson,* Attorney General, *Raymond Ford, Wallace Sample* and *E. O. Dennison,* for co-relators.

*Smith, McCarthy & Brown* and *Carlton, Ellis & Wilson,* for respondents.

SEBRING, J.:

This is a proceeding in quo warranto brought by the Attorney General to ascertain by what right or authority the respondents claim, hold and exercise the liberties, privileges and franchises of a county budget commission for St. Lucie County, Florida. The respondents have filed their answers to the information and the matter now stands for decision on demurrer to said answers.

Chapter 24866, Laws of Florida, 1947, providing for the creation of a budget commission for St. Lucie County, was duly and regularly enacted by the legislature. Section 19 of the act provided, among other things, "that this Act before

taking effect shall be ratified and approved by a majority of those qualified electors of St. Lucie County, Florida, voting at the next general or special election held in St. Lucie County, at which time the provisions of this bill shall be submitted to the people for their ratification or rejection."

The answers of the respondent show that on April 20, 1948, the Board of County Commissioners of St. Lucie County, by a motion duly and unanimously adopted, directed that the question of establishing a budget commission under the provisions of chapter 24866, supra, be included on the ballot for the primary elections to be held in the County on May 4, 1948 and that in pursuance of said motion provision for the ratification or rejection of the act was placed only upon the official primary election ballots of the Democratic Party and Republican Party used in the primary election held in St. Lucie County on May 4, 1948. The answers further show that at said primary election held on May 4, 1948, and by means of the Democratic and Republican Party ballots furnished for the purpose, 1605 votes were cast in favor of the ratification of the act and 1282 votes were cast in favor of rejection.

The whole question is whether the allegations of the answer are sufficient to show that this election constituted a "General or special election" at which the provisions of the bill were "submitted to the people for their ratification or rejection," as was required by chapter 24866, supra; for if it did not, then the respondents are holding office entirely without authority.

We do not think the allegations of the answer are suficient to show that there has been a valid compliance with the provisions of chapter 24866 with respect to an election to be held to ratify or reject the proposal to create a budget commission. It might have been perfectly proper, in the interest of economy and convenience, for the county commissioners of St. Lucie County to have called a "special election" for the purpose of enabling all the registered voters of the county to vote upon the question of ratifying or rejecting the act and to have made the date of such election fall on the same day

that had been set for the party primary election. Had such a "special election" been held it doubtless would have fulfilled the requirements of the statute, even though the same polling places had been used for both elections, and the same clerks and inspectors employed for the purpose of receiving and canvassing the ballots; provided, that ballots separate and apart from the political party ballots used for voting upon party candidates had been made available, without regard to party affiliations, to all registered voters of the county. However, a party primary election at which, from the very nature of the election being conducted, *only* Democrats and Republicans were eligible to procure ballots could not have been a valid "special election" within the contemplation of the terms of Section 19, chapter 24866, supra. For it cannot be assumed by this court that at the time such primary election was held all duly registered voters in St. Lucie County were members either of the Democratic or the Republican Party. Neither can it be assumed that such duly registered voters of the county as were not Democrats or Republicans and hence were deprived of their right to vote on the issue of ratification or rejection because of the fact that ballots would not have been available to them, were less in number than the majority by which the statute was purportedly ratified at the Democratic and Republican primary party election called and held on May 4, 1948.

In a quo warranto proceeding instituted on behalf of the State to test the right to hold an office great particularity is required of the answer. Town of Enterprise v. State, 29 Fla. 128, 10 So. 740. The answer not only must be responsive to the information but it must also show full title in the respondent. State ex rel. Smith v. Anderson, 26 Fla. 240, 8 So. 1. These requirements have not been observed in the present case. When the answers are construed most strongly against the respondents—as such pleadings must be when tested by demurrer—the respondents have failed to show a valid election within the requirements of chapter 24866, supra. A valid election not having been shown, it follows that the appointment of each of the respondents to the office of budget commissioner was without authority of law.

The demurrer to the answers filed by respondents should be and the same is hereby sustained.

It is so ordered.

BARNS, J., and TAYLOR, Associate Justice, concur.

HOBSON, J., concurs specially.

TERRELL, Acting Chief Justice, CHAPMAN and ADAMS, J.J,, dissent.

HOBSON, J., concurring specially:

Although Chapter 24866, Laws of Florida, 1947, is apparently a valid enactment of the legislature, the record before us discloses that Section 19 of said Act, providing for a referendum "in which the qualified electors of St. Lucie County shall take part" to the end that said bill be submitted to "the people for their ratification or rejection," was not followed by the Board of County Commissioners in submitting this Act for ratification or rejection. It is my view that discrimination against all qualified electors other than those who are members of either the Democratic Party or the Republican Party is apparent. In the operation or carrying out of the provision of Section 19 of the Act an invalidity was created when certain qualified electors were disfranchised. Consequently, such discrimination exists as to bring the law in its operation under the condemnation of the equal protection clause of our Constitution.

The right of all the people who are qualified electors to vote in a referendum election such as the one in question here, is not only guaranteed to them by our Constitution as a necessary and integral part of a law which provides for such referendum, but it is also protected when in the carrying out or operation of the law that right has been abridged. It is not enough to say that a qualified elector, who was unaffiliated with either major party, might have coerced the election officials to have permitted him to vote. Provision should have been made for him to exercise his right of franchise as it was for other qualified electors. The act provided for, indeed required that all qualified electors be given an opportunity to vote. It thus escaped inherent invalidity. It is as fatal for

the officers charged with the duty of providing for the election to effectually disfranchise a qualified voter as it is for the Act to fail to protect his fundamental constitutional right.

The method adopted by the County Commissioners in carrying out the provisions of section 19 of the Act was clearly discriminatory and, therefore, should be condemned, regardless of the fact that the County Commissioners are parties as co-relators to this proceeding in Quo Warranto. The State of Florida on relation of the Attorney General instituted the suit and joined the County Commissioners as co-relators. This was not necessary. It is still a suit brought by the State of Florida on relation of the Attorney General and any principle of estoppel as against the County Commissioners is not controlling. However, it is not my conclusion that officials who have apparently failed to carry out their duties as prescribed by law should be estopped, when they realize their dereliction, from attempting to correct their error and perform again and in a lawful manner their express duties.

I concur in the order sustaining the demurrer to the answers.

ADAMS, J., dissenting:

This writer is unable to agree with the opinion and conclusion reached by the majority opinion.

The general law is that courts are reluctant to set aside the results of an election once the results are tabulated and filed. The rule has been universal that the courts would not interfere in the basence of fraud or where some duly qualified elector was not permitted to cast a ballot. Long ago this court declared in Carn v. Moore, 74 Fla. 77, 76 So. 337:

" . . . Our election laws, like all others, contain two classes of requirements and prohibitions. Over one the elector can exercise no control, over the other he can. He should be held to strict accountability for such things as are within his control, but not for those things which public officials are required to do. A voter may sacrifice his right to have his ballot accepted and counted for wrongful or illegal acts on his

part, but he is not to be deprived of his constitutional rights by the neglect or wilful wrong of a public officer charged with the duty of supplying him with the means or the opportunity of expressing his choice. The attack on this election, is purely technical, as no fraud was established, nor was it shown that a single voter was prevented from expressing his choice, or that had the ballots not been printed as they were, the result would have been different. . . . "

We have many times differentiated irregularities in matters of procedure leading up to the election and irregularities transpiring in and about the conduct of the election. See Pearson v. Taylor 159 Fla. 775, 32 So. (2nd) 826 and cases there cited.

The case now before us presents a highly technical matter which in no way affected the manner in which the election was held neither did it affect the results. No elector is complaining. No one was disfranchised. Apparently every qualified elector voted his choice as desired. No fraud or even irregularity is charged in conducting the election. The returns were made and respondents were duly appointed, qualified and proceeded to discharge their duties. At this juncture the co-relators, County Commissioners, institute this proceeding in the name of the Attorney General seeking to impeach their own official act. To thus state the case is to decide it. If there can be a case where the law of estoppel applies this is it. See the law of estoppel in election cases, 18 Am. Juris., Sec. 280.