R. William Rutter, Jr. Palm Beach County Attorney West Palm Beach
QUESTION:
May a special election called for the purpose of submitting a proposed county charter for approval by the electorate be held on the same date as the date fixed for the general election or a primary election?
SUMMARY:
A special election called by the board of county commissioners to submit a proposed county charter for adoption by the qualified electors of the county may be held on the same date as the date fixed for a general or primary election, provided it is held within the 45-day time limitation period prescribed by s.125.64(1), F. S., and all registered voters of the county, without regard to party affiliation, are allowed to participate or vote in such special election. The substance of such public measure may be printed on the official ballot to be voted on by the electorate, provided that the form of such ballot has been approved by the Department of State pursuant to s. 101.27, F. S.
Your question is answered in the affirmative.
Section 1(c), Art. VIII, State Const., provides:
 Pursuant to general or special law, a county government may be established by charter which shall be adopted, amended or repealed only upon vote of the electors of the county in a special election called for that purpose. (Emphasis supplied.)
Section 5, Art. VI, State Const., in pertinent part, provides: `. . . Special elections and referenda shall be held as provided by law.'
Sections 125.60-125.64, F. S., provide procedures for the adoption, by the qualified electors of the county, of a county home rule charter proposed by a charter commission. Section125.64(1) reads:
 Upon submission to the board of county commissioners of a charter by the charter commission, the board of county commissioners shall call a special election to be held not more than 90 nor less than 45 days subsequent to its receipt of the proposed charter, at which special election a referendum of the qualified electors within the county shall be held to determine whether the proposed charter shall be adopted. Notice of the election on the proposed charter shall be published in a newspaper of general circulation in the county not less than 30 nor more than 45 days before the election.
At the outset, it is helpful to distinguish between the terms `general election' and `special election.' A `general election' has been defined as an election which recurs at stated intervals as fixed by law without any superinducing cause other than the passage of time; and, it is held to select an officer to succeed to the office on the expiration of the full term of the incumbent.See s. 5, Art. VI, State Const. A `special election,' however, is an election that `arises from such exigency or special need outside the usual routine, such as . . . [the need] to submit to the electors a measure or proposition for adoption or rejection.' 25 Am. Jur.2d Elections s. 3, p. 692. See also 29 C.J.S. Elections
s. 1(3), p. 19, and cases cited therein. Cf. s. 97.021(4), F. S. 1977, defining, for purposes of the Florida Election Code, the term `general election' as
 an election held on the first Tuesday after the first Monday in November in the even-numbered years, for the purpose of filling national, state, county, and district offices and for voting on constitutional amendments not otherwise provided for by law
and cf. s. 97.021(5) defining `special election' as `a special election called for the purpose of voting on a party nominee to fill a vacancy in national, state, county or district office.'
As to whether a special election may be held on the same date as a general election, a majority of courts which have considered the issue have taken the view that the two elections may be held on the same date. See State ex rel. Sampson v. Superior Ct.,128 P. 1054 (Wash. 1913), and State ex rel. Hunt v. Tausick, 166 P. 651
(Wash. 1911). Since the time of a special election is not ordinarily fixed by law, but rather is fixed by some designated agency or official, it has been held that the officer charged with fixing the time of the special election possesses discretion or authority to hold the special election on the same day as the general election. 29 C.J.S. Elections s. 77, p. 175; Furste v. Gray, 42 S.W.2d 889 (Ky. 1931).
Similarly, the Florida courts have recognized that those officers responsible for setting the date of a special election possess broad discretion in so doing. For example, in Senior Citizens Protective League, Inc. v. McNayr, 132 So.2d 237 (3 D.C.A. Fla., 1961), the court considered a provision of the Dade County Charter which required the board of county commissioners to set a special election on a proposed amendment to the charter in not less than 60 days nor more than 120 days from either the date of resolution adopted by the board proposing an amendment or receipt of an initiatory petition, certified in an appropriate manner, proposing an amendment. The court held at 239:
 Within the permissible 60-day period prescribed by the time limitation, the Board of County Commissioners, as the legislative body of the county, may set such election which may not be interfered with by the courts without a showing of fraud, corruption, gross abuse of discretion, etc. [citations omitted.]
Moreover, in State ex rel. Watson v. Scott, 37 So.2d 330 (Fla. 1948), the court held that `[i]t might have been perfectly proper, in the interests of economy and convenience . . .' for a board of county commissioners to have called a special election to be held on the same date set for a primary election. The court reasoned as follows:
 Had such a `special election' been held it doubtless would have fulfilled the requirements of the statute, even though the same polling places had been used for both elections, and the same clerks and inspectors employed for the purpose of receiving and canvassing the ballots; provided that ballots separate and apart from the political party ballots used for voting upon party candidates had been made available, without regard to party affiliations, to all registered voters of the county.
Application of the foregoing cases to your inquiry leads me to conclude that the board of county commissioners would be authorized to hold the special election contemplated by s. 125.64, F. S., on the same date as the date of the general election or a primary election, provided of course that the date fixed for such election is `not more than 90 nor less than 45 days' subsequent to the board's receipt of the proposed charter, and all registered voters of the county, without regard to party affiliations, are allowed to participate or vote in the special election. I must, however, emphasize that, although a special election may be held on the same date as the general election or a primary election, such a special election has historically been deemed to be a separate and distinct election. See State ex rel. Watson v. Scott,supra. This office has on past occasions ruled that should a special election be scheduled for the same day as a general or primary election, then each election must be `kept separate and distinct in all phases of the conduct of both. . . .' Attorney General Opinion 054-53, Biennial Report of the Attorney General, 1953-54, p. 94. Separate ballots and ballot boxes were required to be furnished for each election. See AGO 048-103, Biennial Report of the Attorney General, 1947-48, p. 74; AGO 048-119, Biennial Report of the Attorney General, 1947-48, p. 75; AGO 054-22, Biennial Report of the Attorney General, 1953-54, p. 97; and AGO 054-53, Biennial Report of the Attorney General, 1953-54, p. 84. Moreover, separate ballots were deemed necessary whether the election was conducted with paper ballots or voting machines. In this regard, AGO 056-216 considered the question of whether or not the Tampa Board of Elections could call a special municipal election to be held in conjunction with the regular statewide election, with ballots for both elections being placed on the voting machines used. That opinion concluded, in part:
 Sections 99.131, 100.031, 101.151, 101.25, F. S. [1955], as well as other provisions, leave no doubt as to what should appear on a general election ballot. In none of these statutes is there any indication that the election of a municipal official could be accomplished through the use of space on the general election ballot. From this it may be concluded that the election of a mayor for the city of Tampa can not be had by including the names of that office and the candidates for it on the general election ballot. The old legal principle, expressio unius est exclusio alterius, is aptly applied here in that the expression in these laws of the things to be included on a general election ballot excludes anything else from being put on the ballot.
However, since the issuance of AGO 056-216, the Legislature has on several occasions amended the statutory provisions cited in that opinion. The most comprehensive revision occurred in 1977 when the Legislature enacted Ch. 77-175, Laws of Florida, which revised and amended the entire Election Code (Chs. 97-106, F. S.). Specifically, s. 101.161, F. S., has been amended to provide:
 Whenever a constitutional amendment or other public measure
is submitted to the vote of the people, the substance of such
amendment or other public measure shall be printed on the ballot after the list of candidates, followed by the word `for,' and also by the word `against.' The wording of the substance of the amendment, or other public measure to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, or enabling resolution or ordinance and shall be furnished to the supervisor of elections of each county in which such public measure is to be voted on. The Department of State shall give each proposed constitutional amendment a designating number for convenient reference. This number designation shall appear on the ballot. (Emphasis supplied.)
Other provisions of the Election Code relating to the preparation and casting of ballots refer, in general terms, to the placement of questions or propositions on the ballot. See, e.g., s. 101.011(1), F. S., stating that an elector voting by paper ballot shall
 place an `X' mark after the name of the candidate of his choice for each office to be filled, and likewise mark an `X' after the answer he desires in case of a constitutional amendment or other question submitted to a vote (Emphasis supplied.)
See also s. 101.27(1), F. S., providing for the placement in voting machines of ballots of `the name of the candidate, statement of the proposed constitutional amendment, or otherquestion or proposition submitted to the electorate at anyelection' (Emphasis supplied.); s. 101.27(2) requiring that the captions on the ballots for voting machines be placed so as to indicate to the elector what lever or other device is used or operated in order to cast his vote `for or against a candidate, proposed constitutional amendment, or other question orproposition submitted to the electorate at any election' (Emphasis supplied.); and s. 101.24, F. S., providing that the supervisor of elections, except where voting machines are used, `shall prepare for each polling place one ballot box of sufficient size to contain all the ballots of the particular precinct. . . .' (Emphasis supplied.) See also s. 125.01(1)(y) which authorizes the board of county commissioners to
 [p]lace questions or propositions on the ballot at any primary election, general election, or otherwise called special election, when agreed to by a majority vote of the total membership of the legislative and governing body, so as to obtain an expression of elector sentiment with respect to matters of substantial concern within the county.
It seems clear from an examination of the foregoing statutory provisions that the Election Code no longer contemplates the provision of separate ballots or ballot boxes under circumstances where a special election is held on the same day as a general or primary election. To the contrary, it would appear that the question of whether or not a proposed county charter should be adopted may be submitted to the electorate as part of the official ballot, provided that the form of such ballot has been approved by the Department of State as required by law (see s. 101.27(6), F. S.)
Prepared by: Patricia R. Gleason, Assistant Attorney General